(84 N. W. Rep. 568.)

---

ABBIE J. COREY *vs.* DAVID HUNTER, *et al.*

Opinion filed November 19, 1900.

### Agent—Authority—Foreclosure of Mortgage.

The plaintiff, being the owner of a note secured by a real estate mortgage containing a power of sale, transmitted certain interest coupons to an agent for collection; the plaintiff herself retaining the principal note, not yet due, and the mortgage; such agent having no express authority to do more than collect such interest and remit the same to plaintiff. *Held*, that the agent had no implied authority to foreclose the mortgage.

**Evidence Insufficient to Show Authority in Agent.**

> *Held*, further, that the evidence did not warrant the court in finding that such agent had either actual control or ostensible authority to foreclose the mortgage.

**No Implied Authority.**

> The fact that a negotiable promissory note is made payable at a particular office does not make the party in charge of said office the agent of the holder of such note to receive payment, unless the note is actually in the possession of said party. Hollinshead v. John Stewart & Co., 8 N. D. 35 and Stolzman v. Wyman, 8 N. D. 108, followed.

**Papers Not Properly in Stated Case.**

> A letter purporting to have been written by 'one of the counsel for plaintiff was found by the trial judge in the envelope containing plaintiff's deposition, and was by order of the court filed with the clerk. Said purported letter was not offered in evidence. *Held*, that said letter was not properly before the court, and should not be considered.

Appeal from District Court, Pembina County; *Sauter*, J.

Action by Abbie J. Corey against David Hunter and others to foreclose a real estate mortgage. From a judgment in favor of defendants, plaintiff appeals.

Reversed.

*J. G. Hamilton* and *Tracy R. Bangs,* for appellant.

The question is one of agency. The statute designates two kinds of agents,—general and special, Rev. Codes 1895, section 4306; and these are divided into two classes,—actual and ostensible, Rev. Codes 1895, section 4307, and any agent has such authority as the principal actually or ostensibly confers upon him. Rev. Codes 1895, section 4320. There must be some substantial ground for the agent's right to act, and his authority must be direct and specific, or the facts and circumstances must be of such a nature that the agent's right to act may be fairly implied. *Trull* v. *Hammond,* 73 N. W. Rep. 642 (644). Particularly is this true where the agent relies on implied authority to charge real property. *Union Mut. L. Ins. Co.* v. *Masten,* 3 Fed. Rep. 881; *Challoner* v. *Bouck,* 56 Wis. 652. Every delegation of power carries with it, by implication, the authority to do those things which are reasonable, necessary and proper to carry into effect the main power conferred and which are not forbidden. But the doctrine of implied authority goes no further than this. *Burchard* v. *Hull,* 74 N. W. Rep. 163 (165). Apparent authority is that authority which an agent appears to have from that which he actually does have, and not from that which he may pretend to have, or from his actions on occasions which are unknown to and unratified by his principal. *Oberne* v. *Burke,* 46 N. W. Rep. 838 (842). The principal is responsible only for the appearance of authority which is caused by himself, and not for an appearance of conformity to authority caused only by the agent. *Edwards* v. *Dooley,* 120 N. Y.

540; *Burchard* v. *Hull,* 74 N. W. Rep. 163 (164). When the agency is to be inferred from the conduct of the principal, that conduct furnishes the only evidence of its *extent* as well as of its *existence. Humphrey* v. *Havens,* 12 Minn. 198. No authority to receive payment of a loan is to be implied from the fact that the agent is employed to negotiate it. 1 Am. & Eng. Enc. L. (2d Ed.) 1026 and cases cited; *Western Sec. Co.* v. *Douglass,* 44 Pac. Rep. 257 (259); *Smith* v. *Kidd,* 68 N. Y. 130, 23 Am. Rep. 157 (161); *Schenk* v. *Dexter,* 79 N. W. Rep. 526; *Trull* v. *Hammond,* 73 N. W. Rep. 642 (644.) The fact that a note is made payable at a particular office does not, of itself, invest the person in charge of the office with implied or apparent authority to collect either principal or interest. *Hollinshead* v. *Stuart,* 8 N. D. 35; *Stoltzman* v. *Wyman,* 8 N. D. 108; *Dwight* v. *Lenz,* 77 N. W. Rep. 285; *St. Paul Nat. Bank* v. *Cannon,* 48 N. W. Rep. 526; *Trowbridge* v. *Ross,* 63 N. W. Rep. 534; *Englert* v. *White,* 60 N. W. Rep. 224. The fact that an agent has, from time to time, collected the amount due on interest coupons, he being then in possession of the coupons, does not vest in him either implied or apparent authority to collect the principal without possession of the principal note. *Bull* v. *Mitchell,* 66 N. W. Rep. 632; *Western Sec. Co.* v. *Douglass,* 44 Pac. Rep. 257; *Trull* v. *Hammond,* 73 N. W. Rep. 642; *Joy* v. *Vance,* 62 N. W. Rep. 140; *Porter* v. *Ourada,* 71 N. W. Rep. 52; *Klindt* v. *Higgins,* 64 N. W. Rep. 414; *Bromley* v. *Lathrop,* 63 N. W. Rep. 510; *Stolzman* v. *Wyman,* 8 N. D. 108; *Hollinshead* v. *Stuart,* 8 N. D. 35; *Dexter* v. *Morrow,* 79 N. W. Rep. 394; *Schenk* v. *Dexter,* 79 N. W. Rep. 526; *Burchard* v. *Hull,* 74 N. W. Rep. 163; *Security Co.* v. *Graybeal,* 52 N. W. Rep. 497; *Brewster* v. *Carnes,* 9 N. E. Rep. 323; *Doubleday* v. *Kress,* 50 N. Y. 410, 10 Am. Rep. 502; *Dwight* v. *Lenz,* 77 N. W. Rep. 546; *Campbell* v. *O'Connor,* 76 N. W. Rep. 167; *Chandler* v. *Pyott,* 74 N. W. Rep. 263; *Stark* v. *Olson,* 63 N. W. Rep. 37; *Wilson* v. *Campbell,* 62 N. W. Rep. 278; *Trowbridge* v. *Ross,* 63 N. W. Rep. 534; *Bromley* v. *Lathrop,* 63 N. W. Rep. 511; *Terry* v. *Durrand Land Co.,* 71 N. W. Rep. 525; *United States Bank* v. *Bursom,* 57 N. W. Rep. 705. Nor does the fact that the agent has collected the principal of other loans invest him with such authority. *Church Ass'n* v. *Walton,* 72 N. W. Rep. 998; *Joy* v. *Vance,* 62 N. W. Rep. 140; *Smith* v. *Kidd,* 68 N. Y. 130, 23 Am. Rep. 157, 165. No act of an agent tending to extend the scope of his employment, however extensive or often repeated, which does not come to the knowledge of the principal, will enlarge his authority to bind him. *Oberne* v. *Burke,* 46 N. W. Rep. 838; 1 Am. & Eng. Enc. L. (2d Ed.) 969, note 1. Possession of the securities is the crucial test of an agent's implied or apparent authority to receive payment, and without such possession he is without apparent authority. *Walsh* v. *Peterson,* 81 N. W. Rep. 853 (855); *Trull* v. *Hammond,* 73 N. W. Rep. 642 (644); *Tappan* v. *Morseman,* 18 Ia. 500; *Wooding* v. *Bradley,* 76 Va. 614; *Davidson* v. *Porter,* 57 Ill. 300, and many of the cases above cited.

*W. J. Burke* and *Bosard & Bosard,* for respondent.

An authority is raised by implication of law where the principal has justified the belief that he has given such authority in cases where he has employed a person in a regular employment and permitted him for a considerable time to transact a particular business for the principal. *Dows* v. *Greene,* 16 Barb. 72; *Lyell* v. *Sanborn,* 2 Mich. 109; 1 Pars. Conts. § 2. An agent entrusted with the performance of a particular duty has implied authority to do such incidental acts as are necessary and usual for carrying out the main purpose of his employment. Addison, Cont. § 58; Storey on Agency, § 443; Storey on Agency, § § 1773, 126. A principal is bound by his agent's acts within the apparent authority which the principal knowingly permits his agent to assume or which he holds the agent out to the public as possessing. *Heath* v. *Stoddard,* 40 Atl. Rep. 547; *Sweetzer* v. *Shorter,* 26 So. Rep. 298; *Lytle* v. *Bank,* 26 So. Rep. 6; *Flagg* v. *Marion County,* 48 Pac. Rep. 693; *Blake* v. *Mfg. Co.,* 38 Atl. Rep. 241; *Sawin* v. *Union B. & S. Ass'n,* 64 N. W. Rep. 402; *Griggs* v. *Sheldon,* 53 Vt. 501; *Thompson* v. *Shelton,* 68 N. W. Rep. 1055; *Phoenix Ins. Co.* v. *Walter,* 70 N. W. Rep. 938. That the person to whom money due another is paid is not in possession of the instruments by which the indebtedness is evidenced, is not conclusive of the question of authority or lack of it. *Thompson* v. *Shelton,* 68 N. W. Rep. 1055; *Phoenix Ins. Co.* v. *Walter,* 70 N. W. Rep. 938. That the authority of an agent is limited to a particular business does not make the agency special. It may be as general in regard to that as if the range of it were unlimited. *Crain* v. *Bank,* 114 Ill. 516; *Anderson* v. *Connelly,* 21 Wend. 279; *Jeffery* v. *Bigelow,* 13 Wend. 518; *Roundtree* v. *Benson,* 59 Wis. 522; *Bell* v. *Offutt,* 10 Bush. 632. McLaughlin had authority to conduct the business of his principal, and therefore had authority to do everything necessary or proper and usual in the ordinary course of that business. *Minor* v. *Bank,* 26 U. S. 46, 7 L. Ed. 47; *Sentell* v. *Kennedy,* 29 La. Ann. 679; *German Fire Ins. Co.* v. *Gunert,* 112 Ill. 68; *Banner Tobacco Co.* v. *Jenison,* 48 Mich. 459; *Shepherd* v. *Gas Light Co.,* 11 Wis. 234; *Bridenbecker* v. *Lowell,* 32 Barb. 9; *Cummings* v. *Sargent,* 9 Metc. 172; *Taylor* v. *LaBeaume,* 14 Mo. 572, 17 Mo. 338; *Baker* v. *Ry. Co.,* 91 Mo. 152; *Johnson* v. *Jones,* 4 Barb. 369. One clothing an agent with apparent authority is not, to parties dealing on the faith of such authority, conclusively estopped from denying it. *Hubbard* v. *Tenbrook,* 2 L. R. A. 823; *Bank* v. *Ry. Co.,* 106 N. Y. 195; *Over* v. *Shiffling,* 102 Ind. 191. Ostensible authority to act as agent may be conferred if the party to be charged as principal, affirmatively or intentionally, or by lack of ordinary care, causes or allows third persons to trust and act upon such apparent agency. *Thompson* v. *Shelton,* 68 N. W. Rep. 1055, 49 Neb. 644; *Insurance Co.* v. *Walter,* 70 N. W. Rep. 938, 51 Neb. 182; *Porter* v. *Ourada,* 71 N. W. Rep. 52, 51 Neb. 510; *Frey* v. *Curtis,* 72 N. W. Rep. 478,

52 Neb. 406; *Holt* v. *Schneider,* 77 N. W. Rep. 1086; *Esley* v. *Snyder,* 45 N. W. Rep. 415. Where an agent obtains possession of the property of another by making stipulations or conditions which he was unauthorized to make, the principal must either return the property or, if he receives it, it must be subject to the condition upon which it was parted with by the former owner. *Mundorff* v. *Wickersham,* 3 Am. Rep. 531.

FISK, District Judge. This is an action brought to foreclose a certain mortgage upon real property executed and delivered on January 4, 1892, by the defendants David Hunter and Annie, his wife, to one S. W. McLaughlin, to secure the payment of a certain promissory note for $1,350, payable by its terms at the office of said McLaughlin in Grand Forks, on December 1, 1896, which note and mortgage were on March 4, 1892, assigned to the appellant, Abbie J. Corey, of Brookline, Mass., the assignment of which mortgage was on March 11, 1892, recorded in the office of the register of deeds of Pembina county. No question is raised as to the validity of the transfer of this paper, nor as to the bona fides of the transaction whereby this appellant became the owner of said note and mortgage. Appellant remained in the exclusive possession of said paper from the date of such assignment to her until about November 20, 1897, excepting that, as the coupon interest notes became due, they were forwarded by her to McLaughlin for collection. In 1892 the mortgagors sold the real property described in said mortgage to one Sheppard, who in 1895 sold the same to the respondent O'Sullivan. Neither the mortgagor, Hunter, nor his grantee, Sheppard, ever paid any of the coupon interest notes, excepting those which became due December 1, 1892, and December 1, 1893; but the said McLaughlin remitted to appellant the interest which became due on December 1, 1894, and on December 1, 1895, and appellant had no reason to suppose that said interest had not been paid by the mortgagors to McLaughlin. On or about February 27, 1895, one R. W. Cutts, an attorney at law, and who was an employe in the office of the said McLaughlin, at the request of said McLaughlin, and without the knowledge of appellant, commenced proceedings for the foreclosure of said mortgage by advertisement, pursuant to the power contained in the said mortgage, claiming default by reason of the nonpayment of interest. The notice of said foreclosure was signed: "Abbie J. Corey, Assignee of Mortgage. R. W. Cutts, Attorney, Grand Forks, N. D." Pursuant to said notice of foreclosure, and on April 13, 1895, the respondent McCabe, as sheriff of Pembina county, offered said mortgaged premises for sale, and said real property was bid in in the name of this appellant for the sum of $1,670.74. A certificate of sale was issued as provided by law, and was on the 19th day of April, 1895, filed for record. Said certificate was never delivered to appellant, nor did she know of its issuance until about November 20, 1897. On November 14, 1895, the respondent O'Sullivan paid to McCabe, as

sheriff, the sum of $1,780, for the purpose of effecting a redemption from such foreclosure sale; and the said McCabe, as such sheriff, executed and delivered to respondent O'Sullivan a sheriff's certificate of redemption, which certificate was recorded on November 16, 1897. In September, 1897, respondent O'Sullivan executed and delivered to the respondent John Birkholz two mortgages on the premises so redeemed,—one for $3,500, and the other for $711.66, the former of which was assigned by the said Birkholz to respondent Wallbaum. Both mortgages were duly recorded. The money which was paid to redeem said premises from said foreclosure was by the sheriff, under the directions of said Cutts, remitted to McLaughlin, and no part of the same was ever paid to appellant. So far as this record discloses, appellant had no knowledge of such foreclosure proceedings, nor of the pretended redemption, until November, 1897; and appellant in this proceeding seeks to foreclose said mortgage, and to have said attempted foreclosure by advertisement treated as a nullity.

From the foregoing facts it is apparent that the question here presented is one of agency. Did the persons who were instrumental in the foreclosure proceedings act either as the actual or ostensible agents of appellant? If not, then such foreclosure proceedings were not binding on appellant, and she had the undoubted right to treat them as a nullity. No authority on the part of Mr. Cutts or of respondent McLaughlin is claimed, except such, if any, as may have been acquired through McLaughlin. Nor can it be claimed that McLaughlin had any express authority from appellant to foreclose said mortgage. Had respondent McLaughlin any actual or ostensible authority to collect the debt secured by this mortgage, either by foreclosure of the mortgage or otherwise? If not, then it must follow that respondent O'Sullivan was not justified in paying to respondent McCabe the money which he paid to redeem, and he acquired no rights under such redemption; nor was the respondent McCabe justified in paying such redemption money to McLaughlin. "Actual authority," as defined by the Code, is such authority as the principal intentionally confers upon the agent, or intentionally or by want of ordinary care allows the agent to believe himself to possess. Rev. Codes 1899, § 4321. We are unable to find in this record any evidence of such actual authority, but, on the other hand, the undisputed evidence is that no such authority existed. From the testimony of Mr. Cutts, it appears that he acted solely upon the request and under the instructions of McLaughlin; and appellant denied positively that she ever authorized McLaughlin or Cutts to foreclose said mortgage or to collect said note. Her testimony not only is uncontradicted, but it is strongly corroborated by the fact that at the time of the foreclosure there was no default in the conditions of the mortgage. The principal note was not due, and McLaughlin had remitted to her the installments of interest as they matured. Another circumstance tending to corroborate her testimony is the fact that the note and mortgage were not in the

possession of McLaughlin or the attorney, Cutts. If appellant had directed the foreclosure proceedings to be instituted, it is reasonable to presume that the note and mortgage would have been transmitted by her to McLaughlin for the purpose of foreclosure. Counsel for respondent contend, in effect, that McLaughlin had actual authority to foreclose said mortgage, for the reason, as they claim, that although appellant did not intentionally confer such authority upon her alleged agent, still, in the language of the Code, she "intentionally or by want of ordinary care allowed such agent to believe himself to possess such authority." Counsel, in their brief, after quoting the above section of our Code, use this language: "Can it be thought for one moment that Mr. Cutts, who was the attorney who foreclosed this mortgage, had any doubts whatever about his agency or the agency of McLaughlin, when he made his attorney's affidavit of foreclosure, swearing that he was the attorney for the plaintiff?" Counsel apparently overlook the fact that under the statute which they quote the test is not what authority the agent believed he possessed, but, what did the principal, intentionally or by want of ordinary care, allow the agent to believe himself to possess? Tested by this rule, we have no hesitancy in arriving at the conclusion that there is no sufficient evidence in the record to warrant a court in holding that actual authority existed in McLaughlin to foreclose said mortgage. If appellant intentionally conferred upon McLaughlin any authority to foreclose said mortgage, or if she intentionally or by want of ordinary care allowed McLaughlin to believe that he possessed such authority, the proof of such fact is wholly lacking.

Did McLaughlin possess ostensible authority to foreclose said mortgage? The Code defines "ostensible authority" to be such authority as the principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent posseses. Rev. Codes 1899, § 4322. Did appellant intentionally cause or allow respondents to believe that McLaughlin possessed authority to foreclose said mortgage, or did she, by want of ordinary care, cause or allow them so to believe? We think not. We are unable to find any evidence in the record tending to show such intent on her part, or tending to show a want of ordinary care, such as would cause a belief in the mind of any one that McLaughlin possessed such authority. The most that can be claimed is that McLaughlin acted as appellant's agent in effecting certain loans in this state, including the loan to Hunter, and that from time to time, as the interest or principal of her loans became due, she sent the notes to McLaughlin, with instructions to collect. In no case, however, were any collections made, to appellant's knowledge, except as the notes were sent him by appellant, with special instructions to make the collection; nor did he have any authority from appellant to make any collections of either principal or interest without such instructions. When McLaughlin made collections the proceeds were credited to appellant in McLaughlin's books, and from time to time the amounts thus

standing to the credit of appellant were reinvested, after consulting appellant regarding such reinvestment. In no case were any re-investments made of her funds without her knowledge and express assent. Whenever there was an amount sufficient for an investment standing to her credit on McLaughlin's books, the latter would notify her of what mortgages he had on hand or could obtain; and, in case she desired to reinvest, she would designate the mortgages she desired to purchase, taking such securities as corresponded as nearly as possible with the amount of money to her credit. Upon receiving her acceptance of an offer, McLaughlin would charge the amount thereof to her account, and assign and forward to her the notes and mortgages. As to whether the relation between appellant and Mc-Laughlin in making these investments was that of principal and agent is immaterial, as it is impossible to conceive that any degree of negligence on the part of appellant in respect to the course of dealing pursued in the investment of her funds could give the appearance of authority to make collections of either principal or interest, since the apparent authority of an agent is limited to acts of a like nature to those from which it is implied. It is clearly manifest, therefore, that an apparent or ostensible authority to fore-close the Hunter mortgage, or to collect the principal debt, could not arise from the course of dealings between these parties in making the reinvestment, however general or plenary the agent's powers in that behalf were.

There are certain well-settled principles which are applicable in all cases involving the question of the existence of an agency or the existence of an agent's authority. A person who deals with an agent does so at his peril. He is bound to know that the person with whom he deals is agent of the person whom he claims to represent, and he is also bound to know the extent of such agent's authority. Agency will never be presumed, but where its existence is denied the burden of proof is upon him who affirms its existence, and the proof of such agency must be clear and specific. 1 Am. & Eng. Enc. L. (2d Ed.) p. 968, and cases cited. The agent's authority must be direct and specific, or the facts and circumstances must be of such a nature that the agent's right to act may be fairly implied. *Trull* v. *Hammond* (Minn.) 73 N. W. Rep. 642-644. "It is, of course, a fundamental principle in the law of agency that every delegation of power carries with it, by implication, the authority to do all those things which are reasonable, necessary, and proper to carry into effect the main power conferred and which are not forbidden. But the doctrine of implied authority goes no further than this." *Bur-chard* v. *Hull* (Minn.) 74 N. W. Rep. 165. Apparent authority is that authority which an agent appears to have from that which he actually does have, and not from that which he may pretend to have, or from his actions on occasions which are unknown to and unratified by his principal. *Oberne* v. *Burke* (Neb.) 46 N. W. Rep. 842. But the principal is responsible only for the appearance of authority which is caused by himself, and not for an appear-

ance of conformity to authority caused only by the agent. The extent of an authority of an agent depends upon the will of the principal, and the latter will be bound by the acts of the former only to the extent of the authority, actual or apparent, which he has conferred upon the agent. *Edwards* v. *Dooley,* 120 N. Y. 540, 24 N. E. Rep. 827; *Burchard* v. *Hull* (Minn.) 74 N. W. Rep. 164. "When the agency is to be inferred from the conduct of the principal, that conduct furnishes the only evidence of its extent, as well as of its existence. When the belief of the authority of an agent arises only from previous actions on his part as an agent, the persons treating with him must, on their own responsibility, ascertain the nature and extent of his previous employment." Tested by these ·elementary and well-established principles, we are clearly of the opinion that the course of dealing between these parties with reference to the investment and reinvestment of appellant's funds conferred no implied or apparent authority upon McLaughlin to make collections, either by foreclosure or otherwise; the authority to make collections not being in any degree necessary to the accomplishment of the purposes or object of such agency. Authority to contract confers no authority to sue on the contract. *Markham* v. *Insurance Co.,* 69 Ia. 515, 29 N. W. Rep. 435; 1 Am. & Eng. Enc. L. (2d Ed.) p. 1026, and cases cited. See, also, *Security Co.* v. *Douglass* (Wash.) 44 Pac. Rep. 259; *Smith* v. *Kidd,* 68 N. Y. 130, 23 Am. Rep. 161; *Trull* v. *Hammond,* 73 N. W. Rep. 644. Nor does the course of dealing between appellant and McLaughlin in regard to prior collections of principal or interest warrant the finding that there was an implied or apparent agency or authority to collect the principal of the Hunter debt, either by foreclosure or otherwise. The extent of an agent's authority in certain cases may be governed by usage and custom, but, to have this effect, the authority conferred must be of a kind, or the business transacted of a nature, with reference to which there is a well-defined and publicly known usage. Upon this question, Judge Mitchell, of the Supreme Court of Minnesota, in the case of *Burchard* v. *Hull,* 74 N. W. Rep. 165, says: "It is also true that where the principal confers upon his agent an authority of a kind, or empowers him to transact business of a nature, in reference to which there is a well-defined and publicly known usage, it is the presumption of the law, in the absence of anything to indicate a contrary intent, that the authority was conferred in contemplation of the usage. * * * But, in order to give the usage this effect, it must be known to the principal, or have existed for such a length of time, and become so widely known, as to warrant the presumption that the principal had it in view at the time he appointed the agent. On the facts of this case, the doctrine of implied power cannot be successfully invoked under either of these principles." "There is no proof of any such usage in that business, unless the practice of the Kelleys proves it. But, fortunately, the business methods of the Kelleys are not sufficient to establish a general custom or usage, with reference to which other

people are presumed to contract." "There is a mass of evidence tending to show that it was the custom of the Kelleys to advance money to pay interest on loans placed by them for others, and then foreclose the mortgage, bid the land in, in their own name, and sell it, if not redeemed. But there is not a particle of evidence that plaintiff had any knowledge of such a custom, and, there being nothing in the facts making it her duty to know it, we dismiss the evidence as to the Kelleys' custom with the simple statement that it is wholly irrelevant and immaterial." The record in the case at bar wholly fails to disclose any evidence tending to show any general custom among investment brokers in the locality where McLaughlin carried on his business, or of any particular custom, or that, if any such custom existed, appellant had any knowledge thereof.

Nor did the fact that the Hunter note was payable at McLaughlin's office create any implied or apparent authority upon him to collect the same. In the case of *Hollinshead* v. *John Stuart & Co.,* 8 N. D. 35, 77 N. W. Rep. 89, 42 L. R. A. 659, and also in *Stolzman* v. *Wyman,* 8 N. D. 108, 77 N. W. Rep. 285, this court held that, "when a negotiable promissory note is made payable at a particular office, such fact does not constitute the party in charge of such office the agent of the holder of such note, to receive the money thereon, unless such note is in the possession of such party." While it is true that McLaughlin in some instances collected certain notes for appellant, the record shows that in no instance did he make such collections without first having received from appellant the notes representing the debt collected. And the uncontradicted evidence also shows that prior to the attempted foreclosure in question the respondent McLaughlin never foreclosed any mortgage for appellant, nor had he ever been instructed to do so. In the absence of express authority, or of circumstances from which actual authority can be reasonably inferred, possession of the securities is the crucial test of an agent's implied or apparent authority to receive payment; and, if the agent has no such securities in his possession, the party who pays money to him assumes the burden of showing the authority of such person to receive the payment. 1 Am. & Eng. Enc. L. (2d Ed.) p. 1026; *Security Co.* v. *Graybeal* (Iowa) 52 N. W. Rep. 499. See, generally, upon this subject, *Security Co.* v. *Douglass* (Wash.) 44 Pac. Rep. 257; *Bull* v. *Mitchell* (Neb.) 66 N. W. Rep. 632; *Smith* v. *Kidd,* 68 N. Y. 130; *Trull* v. *Hammond* (Minn.) 73 N. W. Rep. 642; *Joy* v. *Vance* (Mich.) 62 N. W. Rep. 140; *Porter* v. *Ourada* (Neb.) 71 N. W. Rep. 52. The case of *Burchard* v. *Hull* (Minn.) 74 N. W. Rep. 163, is a very similar case to the one at bar, and the very able opinion of Judge Mitchell meets with hearty approval. Among other things, he says: "The case is entirely free from any element of estoppel by conduct, or of apparent as distinguished from actual authority, or of ratification. The defendant must stand exclusively upon the proposition that the act of the plaintiff in delivering or transmitting the interest coupons (herself retaining the mortgage and principal note) to another, with authority

to collect the same, gave such other person implied authority to foreclose the mortgage if the coupons were not paid. If an agent to whom an interest coupon is sent for collection (while his principal retains in his own possession the collateral mortgage and principal note, not yet due) has implied power to foreclose the mortgage, the sooner men know it the better. We apprehend the announcement of any such doctrine would take both the legal profession and business men by surprise." Again, in the case of *Dexter* v. *Morrow*, 79 N. W. Rep. 394, the Supreme Court of Minnesota, in a case involving the same questions here presented, reached the same conclusion.

During the trial of this case in the court below, a certain letter purporting to have been written by J. G. Hamilton, one of the counsel for the appellant, to one W. A. Joy, who was acting as appellant's agent, was found by the trial judge in the envelope containing appellant's deposition in this case, which letter, after cautioning Mr. Joy as to the care which should be exercised in the taking of the plaintiff's deposition, quoted several provisions of our Code relative to agency, and also containing questions to be propounded to her, and her answers thereto. This letter was, by direction of the trial judge, filed in the office of the clerk of court, and the learned trial judge evidently considered said letter as discrediting the testimony of plaintiff as given in her deposition. While the questions and answers in the deposition correspond with the questions and answers as suggested by counsel in said letter, still we do not consider the same of any importance in determining the issues involved. The suggestions as to what answers should be given were qualified by the statement that such answers should conform to the facts, and, while it is unusual for counsel to suggest the exact form of the answer which should be given by a witness, still we do not think that it is a fair inference to draw from this letter that counsel intended to coach his client to testify to anything but the facts. But this document is not before us, and cannot be considered, for the reason that the same was not offered or received in evidence, and it is therefore improperly in the record. The filing of it as ordered by the trial court in the office of the clerk would not be sufficient, in our opinion, to bring the same upon the record.

The decision of the trial court being inconsistent with the foregoing opinion, it follows that the same must be reversed, and the District Court is directed to enter judgment in favor of the plaintiff for the relief prayed for in the complaint, with costs of both courts. All concur.

YOUNG, J., having been of counsel in said case, took no part in the foregoing opinion, Judge Fisk, of the First Judicial Distict, sitting by request.