## LARS MARTINSON v. HELENA MOESZINGER KERSHNER et al.

### (155 N. W. 37.)

**Agency — not presumed — existence denied — burden of proof.**

1. Agency will not be presumed, and where its existence is denied, the burden of proof is upon him who asserts its existence.

---

Note.—On the general question of effect of ratification by principal of unauthor- ized acts of agent, see note in 5 Am. St. Rep. 109.

Negotiable note — mortgage — assignee and owner — interest instalments — collected by mortgagee — permission of assignee — principal — authority to collect — possession.

2. The mere fact that the assignee and owner of a negotiable note and mortgage, while retaining possession of such securities, permits the original mortgagee, or the loan broker who negotiated the loan, to collect the interest instalments, does not confer upon such person, without possession of the securities, authority to collect the principal.

Agent's authority — extent of — will of principal — actual — apparent.

3. The extent of an agent's authority depends upon the will of the principal, and the latter will be bound by the acts of the former only to the extent of the authority, actual or apparent, which he has conferred upon the agent.

Responsibility assumed — ratification — unauthorized act — all material facts — must be made known by agent.

4. As a general rule, except in those cases wherein the principal intentionally assumes the responsibility without inquiry, or deliberately ratifies, having all the knowledge in respect to the act which he cares to have, any ratification of an unauthorized act, or transaction of an agent must, in order to bind the principal, be shown to have been made by him with full knowledge of the material facts relative to the unauthorized transaction.

Opinion filed September 15, 1915. Rehearing denied November 15, 1915.

Appeal from a judgment of the District Court of Ward County, *Leighton*, J. Defendant appeals.

Reversed.

*Bosard & Twiford*, for appellants.

The mere collection of interest by the mortgage company would not be evidence of its authority to collect the principal, even if the authority so to do had not been in writing and specific and limited to the collection of the interest coupon forwarded for such purpose. Hollinshead v. John Stuart & Co. (Hollinshead v. Globe Invest. Co.) 8 N. D. 35, 42 L.R.A. 659, 73 Am. St. Rep. 742, 77 N. W. 89; Corey v. Hunter, 10 N. D. 5, 84 N. W. 570.

The presumption is that no one has authority to collect a negotiable instrument, unless he has the same in his possession and can deliver it; and the debtor assumes all the risk in making payment to one not producing the instrument. Tappan v. Morseman, 18 Iowa, 499; Loizeaux v. Fremder, 123 Wis. 193, 101 N. W. 423; Kohl v. Beach, 107 Wis. 409, 50 L.R.A. 600, 81 Am. St. Rep. 849, 83 N. W. 657.

*F. B. Lambert* (*Elias Rachie,* of counsel), for respondent.

Very slight evidence will warrant a holding that a payment to an agent has been requested, and therefore ratified. Platt v. Schmitt, 117 Wis. 489, 94 N. W. 345.

Where instructions are given by the principal to the agent, couched in ambiguous language, he cannot hold the agent responsible for the consequences, if the agent in good faith put an interpretation upon the instructions not intended. Wilson v. La Tour, 108 Mich. 547, 66 N. W. 475; Church Asso. v. Walton, 114 Mich. 677, 72 N. W. 998; Bissell v. Dowling, 117 Mich. 646, 76 N. W. 100; Ziegan v. Stricker, 110 Mich. 282, 68 N. W. 122; Anderson v. First Nat. Bank, 4 N. D. 196, 59 N. W. 1029; Mechem, Agency, 2d ed. § 793; Hare v. Bailey, 73 Minn. 409, 76 N. W. 213.

The fact that the note being paid is not in the hands of the agent receiving payment is not conclusive as to the agent's want of authority to receive payment. Quinn v. Dresbach, 75 Cal. 159, 7 Am. St. Rep. 138, 16 Pac. 762.

If a principal for any reason allows his agent to act beyond his actual authority, without objection, he is bound to those who are not aware of any want of authority, the same as though the power had been conferred. 1 Clark & S. Agency, pp. 503, 504.

One will be deemed to have ratified an unauthorized collection by an agent, where after making demand of his debtor for payment, he is informed that payment has been made to such agent, and he refrains from further attempt to collect from his debtor. 1 Clark & S. Agency, p. 337.

No particular words or form is necessary to the appointment of an agent.

Agency may be created by express words or acts, or it may be implied from the conduct of the parties. Geylin v. De Villeroi, 2 Houst. (Del.) 311; Fay v. Richmond, 43 Vt. 25.

Ostensible authority to act as agent may be conferred if the party to be charged as principal causes or leads third persons to trust in and act upon such apparent agency, either by words or conduct. Thomson v. Shelton, 49 Neb. 644, 68 N. W. 1055; Phoenix Ins. Co. v. Walter, 51 Neb. 182, 70 N. W. 938; 1 Mechem, Agency, § 717, pp. 506, 507;

Grant County State Bank v. Northwestern Land Co. 28 N. D. 479, 150 N. W. 736.

The fact and scope of an agency not created by writing, but implied from conduct of the principal, are questions of fact for the jury. 1 Clark & S. Agency, p. 526; Kasson v. Noltner, 43 Wis. 646; Phœnix Ins. Co. v. Walter, 51 Neb. 182, 70 N. W. 938.

Where there is sufficient evidence to sustain the findings of the trial court on questions of fact, they will not be disturbed. Thomson v. Shelton, 49 Neb. 644, 68 N. W. 1055.

CHRISTIANSON, J. On the 15th day of April, 1907, one Charles Besmehn was the owner of a quarter section of land in Ward county, in this state. And on that date, through the agency of one M. C. Egan, of Tagus, North Dakota, he obtained a loan on this land from the American Mortgage & Investment Company of St. Paul, Minnesota, and executed and delivered to this company a negotiable promissory note in the sum of $800, payable April 15th, 1912, together with a real estate mortgage upon the land in question to secure the payment of said note. The American Mortgage & Investment Company thereafter, on August 8, 1907, sold, assigned, and delivered the mortgage and the note secured thereby, to one C. Moeszinger, and the assignment of mortgage was filed for record in the office of the register of deeds of Ward county on August 15th, 1907. Moeszinger thereafter died, and his son Louis C. Moeszinger (the father of the defendant Helena Moeszinger Kershner) was appointed executor of the last will and testament of C. Moeszinger. Thereafter, on December 12, 1907, Louis C. Moeszinger as the executor of the estate of C. Moeszinger duly sold, assigned, and delivered the note and mortgage hereinbefore described, to the defendant Helena Moeszinger, who has been the holder and the owner of the note and mortgage at all times since December 12, 1907.

On the 4th day of September, 1907, Charles Besmehn sold the premises involved in this action to the above-named plaintiff, Lars Martinson, and conveyed the same to him by warranty deed, which was recorded in the office of the register of deeds of Ward county on October 25th, 1907.

The interest instalment due April 15, 1908, was paid to M. C. Egan, of Tagus, North Dakota, the loan agent who negotiated the loan. The interest instalment due April 15, 1909, was not paid, and on July 16th,

32 N. D.—4.

1909, the American Mortgage & Investment Company wrote Martinson as follows: "We are advised that you have purchased from Charles Besmehn the SE¼ Sec. 31–155–87, Ward county. We hold a mortgage of $800 against this land, and interest to the amount of $64 became due April 15th.

"Kindly send us a draft for this amount, adding interest from April 15th until the time when the money reaches us."

Thereafter, on July 19th, 1909, a draft was forwarded on behalf of the plaintiff, Martinson, to the Investment Company in payment of such interest. About March 31st, 1910, a draft in payment of the interest instalment due April 15th, 1910, was forwarded to the Investment Company, and on April 2d, 1910, the Investment Company acknowledged receipt of the payment in the following letter: "We acknowledge receipt of your favor of the 31st ultimo with inclosed draft for $64 in payment of interest on a mortgage of $800 on land now owned by Lars Martinson. Canceled coupon we will send you *as soon as we receive the same from the present holder of the mortgage."*

The undisputed evidence shows that the defendant Helena Moeszinger Kershner in no manner authorized the Investment Company to collect either the interest or the principal of the loan. In fact she never had anything to do with the matter personally, but intrusted the handling of these investments to her father, Louis C. Moeszinger. On February 9th, 1912, Louis C. Moeszinger wrote the Investment Company a letter containing the following closing sentence, *viz.,* "I want to give you no'ice now that I want my money on all these loans when due. They are all too slow for me.

Yours very truly, L. C. Moeszinger."
Besmehn, Apr. 15/12. Curtis & Humphrey Nov. 1/12.

The correspondence shows that the plaintiff wrote the Investment Company requesting an extension of the loan. When this request was made or submitted to Moeszinger does not appear, but on April 17th, 1912, the Investment Company replied to such request as follows: "We have your favor inquiring if the Chas. Besmehn mortgage covering the SE¼ of Sec. 31–155–87 now owned by Mr. Martinson can be extended. This mortgage became due on April 15th, and we have just heard from our client to the effect that they cannot extend it, but wish to have the paper retired. We hope, therefore, to receive draft for

the amount, which is $854, with interest thereon at 8 per cent from April 15th until the money reaches us."

It is conceded that the note and mortgage involved herein were never, after their purchase by C. Moeszinger on August 8, 1907, in possession of the American Mortgage & Investment Company, but that such instruments at all times from and after December 12, 1907, were in the possession of Louis C. Moeszinger, as agent for his daughter, Helena Moeszinger Kershner, and that they remained in his possession until he forwarded them to the Scandinavian American Bank of St. Paul, Minnesota, for collection about May 1st, 1912, and that these instruments were afterwards returned to him by the bank, and remained in his possession until delivered to the attorneys for the defendant in this action.

The plaintiff, Martinson, paid the interest instalments which fell due in 1909, 1910, and 1911 to the Investment Company, and the Investment Company remitted the proceeds of such collections to Louis C. Moeszinger. About April 20th, 1912, the plaintiff also caused a draft payable to the American Mortgage & Investment Company for the amount of the principal and interest then remaining due on the mortgage to be forwarded to this company. The Investment Company misappropriated the funds, and thereafter failed, and a receiver was appointed to take charge of its affairs. The defendant and her father had no knowledge whatever of the fact that the principal of the mortgage indebtedness had been collected by, or paid to, the Investment Company until after it went into the hands of the receiver, and the defendant has never received any part of the principal sum and the last interest instalment due on the mortgage.

The defendant Helena Moeszinger Kershner caused the mortgage to be foreclosed by advertisement, and the premises were at such foreclosure sale held on April 19, 1913, purchased by the defendant, and certificate of foreclosure sale issued to her. The plaintiff thereupon brought this action to determine adverse claims and quiet title to the premises. The defendant Helena Moeszinger Kershner answered, asserting that she has a first lien upon the premises for the amount due upon the sheriff's certificate of foreclosure sale. The trial court rendered judgment in favor of the plaintiff. The defendant Helena Moeszinger Kershner has appealed to this court, and demanded a trial *de novo*.

It is conceded by both parties that 'the sole question involved in this case is one of agency. Respondent does not contend that any equitable estoppel exists in this case, but relies solely on the proposition that the American Mortgage & Investment Company was the agent of the defendant, duly authorized to receive payment of the mortgage indebtedness. It was incumbent upon the plaintiff to prove that the Investment Company had such authority.

In Corey v. Hunter, 10 N. D. 5, 12, 84 N. W. 570, this court said: "There are certain well-settled principles which are applicable in all cases involving the question of the existence of an agency, or the existence of an agent's authority. A person who deals with an agent does so at his peril. He is bound to know that the person with whom he deals is agent of the person whom he claims to represent, and he is, also bound to know the extent of such agent's authority. Agency will never be presumed; but where its existence is denied, the burden of proof is upon him who affirms its existence, and the proof of such agency must be clear and specific." Plaintiff does not specify whether the authority relied on is actual or ostensible, but broadly asserts that the Investment Company as defendant's agent had authority to receive payment of the principal. Under our statute, "actual authority is such as a principal intentionally confers upon the agent, or intentionally or by want of ordinary care allows the agent to believe himself to possess." Comp. Laws 1913, § 6337. And "ostensible authority is such as the principal intentionally or by want of ordinary care causes or allows a third person to believe the agent to possess." Comp. Laws 1913, § 6338.

There is no contention that the plaintiff relied on any statement of the defendant or her father, or that plaintiff had any knowledge of the contents of the correspondence between the Investment Company and Moeszinger. Hence, at the time plaintiff paid the principal to the Investment Company the only acts of which he had cognizance, and from which authority could possibly be inferred, was the fact that the Investment Company had collected the three interest instalments, for the years 1909, 1910, and 1911. And so far as the 1910 instalment was concerned, the letter, from the Investment Company acknowledging receipt of the payment, expressly informed the plaintiff that the In-

vestment Company did not have the interest coupon in its possession, but that it was in the hands of the then holder of the loan.

It is well settled, however, that the mere fact that the assignee and owner of a negotiable note and mortgage, while retaining possession of the securities, permits the original mortgagee, or the loan broker who negotiated the loan, to collect the interest instalments, is not sufficient to confer upon such person, without possession of the securities, authority to collect the principal of the mortgage indebtedness. "In the absence of express authority, or of circumstances from which actual authority can be reasonably inferred, possession of the securities is the crucial test of an agent's implied or apparent authority to receive payment; and if the agent has no such securities in his possession, the party who pays money to him assumes the burden of showing the authority of such person to receive the payment." Corey v. Hunter, 10 N. D. 5, 14, 84 N. W. 570. See also Hollinshead v. John Stuart & Co. (Hollinshead v. Globe Invest. Co.) 8 N. D. 35, 42 L.R.A. 659, 73 Am. St. Rep. 742, 77 N. W. 89; Stolzman v. Wyman, 8 N. D. 108, 77 N. W. 285; Trubel v. Sandberg, 29 N. D. 378, 150 N. W. 928; Loizeaux v. Fremder, 123 Wis. 193, 101 N. W. 423; Schultz v. Sroelowitz, 191 Ill. 249, 61 N. E. 92; John Stuart & Co. v. Asher, 15 Colo. App. 403, 62 Pac. 1051.

Plaintiff asserts, however, that the statement contained in the letter written by Moeszinger to the Investment Company on February 9th, 1912, wherein he says: "I want to give you notice now that I want may money on all these loans when due. They are all too slow for me,"— constitutes express authority to the Investment Company to act as agent for the defendant in collecting the principal of the mortgage indebtedness in question. Mr. Moeszinger, while testifying as a witness upon the trial, in response to a question asking him to explain what he meant by the statement, stated: "I meant by that remark that there would be no extension of the time of payment on these loans." Without considering the competency of this testimony, it may be noted that this is about all the force that can be attributed to this statement. The correspondence shows that Martinson had requested an extension of the loan from the Investment Company, but when this request was made, and when submitted to Moeszinger, does not appear from the evidence in this case. It is hard to understand how it can be seriously

asserted that this statement conferred upon the Investment Company authority to collect the principal of the mortgage indebtedness. We are entirely satisfied that no such construction can reasonably be placed thereon. "The agent's authority must be direct and specific, or the facts and circumstances must be of such a nature that the agent's right to act may be fairly implied." Trull v. Hammond, 71 Minn. 172, 73 N. W. 642–644. "It is, of course, a fundamental principle in the law of agency, that every delegation of power carries with it, by implication, the authority to do all those things which are reasonably necessary, and proper to carry into effect the main power conferred, and which are not forbidden. But the doctrine of implied authority goes no further than this." Burchard v. Hull, 71 Minn. 430, 74 N. W. 165. Apparent authority is that authority which an agent appears to have from that which he actually does have, and not from that which he may pretend to have, or from his actions on occasions which are unknown to and unratified by his principal. Oberne v. Burke, 30 Neb. 581, 46 N. W. 842. The principal is responsible only for the appearance of authority which is caused by himself, and not for an appearance of conformity to authority caused only by the agent. The extent of authority of an agent depends upon the will of the principal, and the latter will be bound by the acts of the former only to the extent of the authority, actual or apparent, which he has conferred upon his agent. Edwards v. Dooley, 120 N. Y. 540, 24 N. E. 827; Burchard v. Hull, 71 Minn. 430, 74 N. W. 164. "When the agency is to be inferred from the conduct of the principal, that conduct furnishes the only evidence of its extent, as well as of its existence. When the belief of the authority of an agent arises only from previous actions on his part as an agent, the persons treating with him must, on their own responsibility, ascertain the nature and extent of his previous employment." Corey v. Hunter, 10 N. D. 5, 12, 84 N. W. 570.

The only acts of Moeszinger on which the claim of authority of the Investment Company is based are merely that the Investment Company was permitted to collect the three interest instalments, supplemented by the statement contained in Moeszinger's letter of February 9th, 1912. There is no contention that Moeszinger ever permitted the Investment Company to collect the principal of other mortgages. On the contrary, the undisputed testimony shows that while Moeszinger

had handled some five or six other loans negotiated through the Investment Company, that he never collected the principal of any of these loans through the Investment Company, but always sent the papers to a bank for collection, the same as he did with the papers in this case. The recent case of Trubel v. Sandberg, 29 N. D. 378, 150 N. W. 928, also involved a transaction wherein the American Mortgage & Investment Company collected the principal due on a mortgage originally negotiated by it. In that case, also, the claim was made that the Investment Company was the agent of the holder of the mortgage securities, and as such agent had authority to receive payment of the principal and interest due on the mortgage. In that case the court held that the evidence failed to establish any authority, actual or ostensible, upon the part of the Investment Company to act as agent for the holder of the mortgage in receiving the money from the owner of the land. There is even less evidence to establish agency, either actual or ostensible, in the case at bar, than that presented in the case of Trubell v. Sandberg, and we are satisfied that the decision in that case must control here. The plaintiff in this case cannot be said to have paid the money to the Investment Company as agent for the defendant Helena Moeszinger Kershner. He paid it with knowledge that the Investment Company no longer owned the mortgage, and that at a prior time, when he paid the interest instalment, the Investment Company was unable to deliver the interest coupon until it was obtained from the holder of the mortgage. He paid it without ascertaining whether the Investment Company had any authority whatsoever to represent the then holder of the mortgage.

It is also argued that the defendant ratified the acts of the Investment Company. This argument is based upon the proposition that Moeszinger caused the papers to be sent to the Scandinavian American Bank for collection on May 1st, 1912, or some ten days after the money had been paid to the Investment Company. It is claimed that this constituted an attempt to collect from the Investment Company, and for that reason amounted to a ratification of the Investment Company's acts in collecting the principal.

The Investment Company received the first draft from the plaintiff on April 22, 1912, and a second draft for a $10 deficiency on May 5th, 1912. Moeszinger sent the papers to the bank for collection on May 1,

1912, and they were returned to him by the bank on July 9th, 1912. The undisputed evidence shows that Moeszinger had no knowledge of the fact that the plaintiff had paid the money to the Investment Company until in the fall of 1912. Hence, at the time the papers were sent, and during all the time they remained in the hands of the bank for collection, Moeszinger had no knowledge of the acts of the Investment Company, which it is asserted that he ratified. It is difficult to understand how he could ratify an act of which he had no knowledge.

As a general rule except in those cases where the principal intentionally assumes the responsibility without inquiry, or deliberately ratifies, having all the knowledge in respect to the act which he cares to have, any ratification of an unauthorized act or transaction of an agent must, in order to bind the principal, be shown to have been made by him with full knowledge of all the material facts relative to the unauthorized transaction. See 31 Cyc. 1263–1266; Mechem, Agency, § 129; Clark & S. Agency, § 106; see also Comp. Laws 1913, §§ 6331, 6335.

The judgment appealed from must be reversed. And the District Court of Ward County is directed to enter judgment and decree in favor of the defendant Helena Moeszinger Kershner, as prayed for in her answer. It is so ordered.

## On Rehearing (Filed November 16, 1915).

CHRISTIANSON, J. Plaintiff in a petition for rehearing asserts that the decision of this court in Trubel v. Sandberg, 29 N. D. 378, 150 N. W. 928, cited and relied on in our former decision, is neither applicable to nor controlling in this case. In Trubel v. Sandberg, two questions of agency were presented: (1) Did Mrs. Trubel constitute Faber her agent to collect the mortgage indebtedness? (2) If so, did Faber in turn constitute the Investment Company her agent for the same purpose? The first question to be determined in that case was the authority of Faber. Upon that question Mrs. Trubel testified "that she had no dealings with the Investment Company, but had all her dealings. with Faber, and that she had delivered over her money to Faber, relying upon his integrity to look after the matter for her." The testimony further showed that she purchased the loan involved in that case through

the agency of Faber, and that "as the interest coupons became due she clipped the same, and handed them to Faber, with the request that he collect the money for her." Mrs. Trubel also testified: "Knowing Mr. Faber as I did, and his connection with the bank, I was perfectly satisfied with anything he did in the way of looking after this mortgage investment." This court held that this testimony, when considered in connection with the undisputed fact that Faber did not have possession of the note and mortgage, and that these instruments were retained by Mrs. Trubel, was insufficient to establish agency on the part of Faber.

In the case at bar, it is again earnestly contended, on the petition for rehearing, that the following statement in a letter to the Investment Company gave actual authority to such company to collect the principal of the note and mortgage, regardless of the fact that such instruments were never delivered to the Investment Company, to wit: "I want to give you notice now that I want my money on all these loans when due. They are all too slow for me.

Yours very truly, L. C. Moeszinger."
Besmehn Apr. 15/12. Curtis & Humphrey Nov. 1/12.

It is not contended that the plaintiff had any knowledge of this letter at the time he paid the principal to the Investment Company; and no claim of ostensible authority is based thereon. The sole question is whether this statement, when considered in connection with the undisputed fact that the mortgage and notes in question were retained by the defendant, gave the Investment Company actual authority to collect the principal of the loan. We still believe that the statements in this letter are less evidence of actual authority than the authority with which Faber was invested, under the evidence of Mrs. Trubel. But this court held that Mrs. Trubel's testimony, when considered in connection with the fact that she retained the instruments of indebtedness, failed to show Faber's authority to collect the principal.

Plaintiff's counsel has cited numerous authorities to the effect that express authority to receive payment may be shown by other proof than the possession of the securities. We have said nothing to the contrary. We do not contend that want of possession is conclusive evidence of want of authority; but we do hold (and this rule is recognized by all the authorities cited by plaintiff's counsel), that as possession of evidences of indebtedness, in the absence of countervailing facts, clothes

the agent with apparent authority to collect the indebtedness, so want of possession of such papers, while not conclusive, is evidence of great importance tending to show want of authority. The presumption is that an agent who has possession of the security has authority to make collection thereof; and the presumption is also that an agent who does not have such possession has no authority to collect.

In Loizeaux v. Fremder, 123 Wis. 193, 101 N. W. 423, the supreme court of Wisconsin said: "Negotiability being established, there results the rule that the debtor's duty is to pay to the person who owns the note at the time of payment, or to an agent of such owner actually authorized to receive payment; that no payment to any other person can be of any effect unless made in reliance upon the actual possession of the note, or upon words or acts of the owner so unambiguously declaring the authority of such other person to receive such particular payment as to estop the owner from denying such authority. Possession of a negotiable instrument is generally the sole adequate evidence of apparent authority to collect upon which the debtor has any right to rely, or can, without negligence, do so. . . . This rule has been held sufficient to deny efficacy to such acts as permitting collection of interest, or even prior instalments of principal, which, in relation to other business not involving collection of negotiable paper, might well suffice to establish apparent agency. Commercial paper has always been favored in the law, not less for the ultimate benefit of the giver than of the holder, and the rule just referred to is in line with that policy. It is so simple, and, once understood, furnishes so easy and sure a means for both debtor and owner to protect themselves against unauthorized acts of others, that it ought not to be weakened or confused. The holder can always be safe by retaining the instrument in his possession; the debtor, by refusing payment without actual presentation." The rule laid down by the Wisconsin court was quoted with approval by this court in Trubel v. Sandberg, 29 N. D. 378, 150 N. W. 928, and is equally applicable in the case at bar.

Plaintiff had the burden of showing the authority of the Investment Company to receive payment. The only evidence of such authority is the statement in the letter. Against such is the strong presumption of want of authority, raised by the fact that the defendant retained the securities in her possession, as well as the positive evidence of Moes-

zinger that such authority was never conferred. We are agreed that plaintiff has failed to show that the Investment Company was authorized to receive payment of the principal of the mortgage indebtedness.

The former opinion will stand. A rehearing is denied.