## FRED W. FITCH v. HENRY ENGELHARDT.

(157 N. W. 1038.)

Plaintiff owned land mortgaged to the American Mortgage & Investment Company of St. Paul, Minnesota. Soon after taking it the mortgage had been assigned to Engelhardt. For four years the interest coupons had been collected by the mortgage company for said assignee. In May, 1912, upon maturity of the mortgage, upon receipt from the company of notice to pay interest and principal, plaintiff paid the company the amount of the mortgage and last instalment of interest. The company then failed without remitting said payment to defendant, holder of the mortgage, and without delivering to plaintiff the mortgage securities or a satisfaction of them. Plaintiff brings this action to quiet title and cancel the mortgage as paid. The issue of fact is whether the proof establishes authority in the mortgage company from Engelhardt to collect said interest and principal. *Held:*

Real estate mortgage — principal and interest — collection of — agency — authority of agent — payment to — securities — possession of — proof of agency and authority — methods of.

1. Authority in an agent and the fact of agency to receive payment of a mortgage for the holder thereof may be shown by other proof than that of the possession of the securities. And such authority may be established though

Note.—Authority to collect a security not in possession of the person collecting may be established by showing general agency, express, apparent, or ostensible authority to collect, and also facts to raise an estoppel. For authority in accord with this proposition, see notes in 23 L.R.A.(N.S.) 414; L.R.A.1916B, 860; and 16 Am. St. Rep. 493, on the effect of fact that agent does not have possession of securities upon the question of his authority to receive payment thereof.

the mortgage securities were not in the possession of the collecting agent or exacted by the mortgagor on or prior to payment.

**Agent to collect — authority — proof of.**

2. Agency and authority in the mortgage company as the agent of Engelhardt to collect the amount due on said mortgage is sufficiently established by the proof.

**Agency — supreme court — prior holdings on proof of — facts — each case — governs.**

3. Prior holdings upon proof of agency and authority to collect are distinguished and *held* not controlling under the facts.

Opinion filed May 1, 1916.

Appeal from a judgment of the District Court of Ward County,. *Leighton, J.*

Affirmed.

*Henry Moen (McDowell & Fosseen,* of counsel), for appellant.

The mortgage company was not an ostensible agent. An agent has only such authority as the principal actually or ostensibly confers upon him. Code 1913, § 6324; Mechem, Agency, § 744, p. 528.

Ostensible agency is one by estoppel, and should be restricted to cases where the agency is not real, but apparent. Harris v. San Diego Fluen Co. 87 Cal. 526, 25 Pac. 758; Hollinshead v. John Stuart & Co. (Hollinshead v. Globe Invest. Co.) 8 N. D. 35, 42 L.R.A. 659, 77 N. W. 89; Mechem, Agency, §§ 934–945; Stolzman v. Wyman, 8 N. D. 108, 77 N. W. 285; Dwight v. Lenz, 75 Minn. 78, 77 N. W. 546;. Trowbridge v. Ross, 105 Mich. 598, 63 N. W. 534.

Agency will never be presumed, and where it is claimed and relied upon, and is disputed, the burden of proof is upon him who affirms its. existence, and the proof must be clear and convincing. Corey v. Hunter, 10 N. D. 5, 84 N. W. 570; Busch v. Wilcox, 82 Mich. 336,. 21 Am. St. Rep. 563, 47 N. W. 328; Farrington v. South Boston R. Co. 150 Mass. 406, 5 L.R.A. 849, 15 Am. St. Rep. 222, 23 N. E: 109;. Moore v. Skyles, 33 Mont. 135, 3 L.R.A.(N.S.) 136, 114 Am. St. Rep.. 801, 82 Pac. 799; Trubel v. Sandberg, 29 N. D. 378, 150 N. W. 928..

*Francis J. Murphy,* for respondent.

Faber was the general agent of the defendant, and, as such, had full' authority to collect, receive, and receipt payment, and his acts are bind-

ing on defendant. He sold the loan to defendant; he had the rightful possession of the securities; he caused some of the coupons to be collected, and defendant's own testimony shows him to have been acting as such agent. Mechem, Agency, 2d ed. § 737; Hollinshead v. John Stuart & Co. (Hollinshead v. Globe Invest. Co.) 8 N. D. 35, 42 L.R.A. 659, 77 N. W. 89; Stolzman v. Wyman, 8 N. D. 108, 77 N. W. 285; Corey v. Hunter, 10 N. D. 5, 84 N. W. 570; Trubel v. Sandberg, 29 N. D. 378, 150 N. W. 928; Martinson v. Kershner, 32 N. D. 46, 155 N. W. 37; Weigell v. Gregg, 161 Wis. 413, L.R.A.1916B, 856, 154 N. W. 645; 2 C. J. 625.

Goss, J. Plaintiff, the owner of land mortgaged to the American Mortgage & Investment Company of St. Paul, Minnesota, and assigned by it before maturity to the defendant, Engelhardt, upon maturity of the mortgage in May, 1912, sent the principal, $800, and the interest, $48, to the mortgage company at St. Paul, Minnesota, at which place the mortgage and notes stipulated for payment. Very soon thereafter the company failed. The money paid it as payment of this mortgage and last instalment of interest and owned by the defendant, its assignee, was never paid to him, and upon his refusal to satisfy the mortgage, plaintiff began this action to quiet his title as against it. Defendant in answer denies payment of the principal and last interest instalment, and asks foreclosure accordingly. The trial court held in plaintiff's favor, and found "that on the 6th day of May, 1912, the plaintiff, Fitch, fully paid all indebtedness secured by and described in said mortgage to the American Mortgage & Investment Company, a corporation, *which said corporation was then and there the agent of the defendant, Engelhardt, to receive such payment.*" Defendant appeals. Upon the sufficiency of the proof to establish the italicized portion of this finding, this decision turns. If the corporation was Engelhardt's agent to receive such payment, it was because of actual authority to collect given it by one Faber, cashier of a bank at Mendota, Illinois, the town in which defendant resides and the bank with which he did his business. And Faber's authority in the premises in turn depends upon actual authority received by him from defendant concerning the loan and its collection. As cases of this nature are usually close ones upon the

facts, with the law settled, that portion of the testimony relative to the authority of Faber and the investment company will be detailed.

Fitch had bought this land from a grantee of the original mortgagors, Brust and wife, with two years' interest then paid on the mortgage, leaving three interest instalments and principal remaining. These he assumed. They were held by Engelhardt. The mortgage company also held a second mortgage for 2 per cent of the interest rate, which was not assigned. Upon April 10, 1910, plaintiff received a notice addressed to him at Boone, Iowa, reading:

Interest on your loan on [land described] Ward county, becomes due May 11th, and as it is important that payment reaches the holder of the mortgage on the day it is due we would ask you to kindly send us draft for the amount shown below before due.

Amount, $64.   Exchange, $.25, Total, $64.25.

American Mortgage & Investment Company.

Upon remitting to said company pursuant to such notice, two interest coupons for $48 and $16 respectively were returned to plaintiff. The larger one as material to this inquiry bears the stamp across the face of "Paid, May 13, 1910. American Mortgage & Investment Company, St. Paul, Minnesota." This coupon bore on the back the indorsement of said company to the defendant without recourse, but is not indorsed by the defendant. A year later, upon similar notice, plaintiff remitted to said company for interest due, and again received two interest coupons, the $48 one of which is similarly stamped across the face as "Paid. American Mortgage & Investment Company." This has the indorsement of the defendant on the back thereof as well as that of the "First National Bank of Mendota, Illinois, Gilbert Faber, Cashier." In May, 1912, plaintiff remitted to said company at St. Paul $864 in payment of the $800 principal and the two remaining interest coupons. He did not receive in return the first mortgage papers or coupon, but a satisfaction of the second mortgage, and presumably the second mortgage and $16 coupon. The company wrote him: "We acknowledge receipt of your favor of the 5th inst., inclosing draft for $864 in payment of the Walter J. Brust mortgage covering land in Ward county, N. D. We will send for the papers and forward to you by early mail." Thereafter he received a letter from Faber, bearing

date of June 16, 1912, and addressed to Fitch at Tagus, North Dakota, concerning which plaintiff testifies: "It was forwarded back to me, so I thought there was some crookedness on the part of Faber, and I went down there to Mendota, Illinois."

Concerning what happened there, he says: "When I went up to Engelhardt's house I asked Engelhardt if he had any land or any holdings there in North Dakota, and he said he did. He had some mortgages up there, and I asked him if he had collected the interest, and he said he had not, that Mr. Faber said the crops was poor and they could not get their interest now. I asked him if he did his own business, and he said that Mr. Faber transacted all of his business. So I could not get much satisfaction out of him. He did not know anything about the matter. We went down to see Faber.

Q. In that conversation did Mr. Faber state to you that, in substance, that he had notified the American Mortgage Company *to collect the money on this note?*

A. He said he had but had not received any.

Q. At the time you paid the money to the American Mortgage & Investment Company, did you pay it—did you believe that it was the agent of the holder of the mortgage or note?

A. I thought they were their agents, as I did all my business through them. I had no reason to believe otherwise.

The papers did not arrive from the mortgage company, and on June 16, 1912, before plaintiff went to Illinois, he received the following letter addressed to him at Tagus, North Dakota, under date of June 16, 1912:

I understand you are the present owner of a farm in Ward county, N. D., formerly owned by Walter J. Brust. A client of mine holds a mortgage on this land for $800 which matured on May 11, 1912. I have not received the interest due on that date, nor any reason why the mortgage was not paid when due May 11th. Kindly let me hear from you at once. My client expected the loan to be paid promptly when due. I also wrote the American Mortgage & Investment Company, of St. Paul, who made this loan for Brust, long before the loan was due, telling them it should be paid when due.

Yours truly,
Gilbert Faber.

Thereafter and under date of August 4, 1912, plaintiff received the following letter addressed to Boone, Iowa:

"Your favor of the 31st inst. at hand.  I am very much surprised at the conditions of matters in the loan of $800.  I wrote Mr. Strum, Pres., long before that loan matured that my client expected prompt payment of the same at maturity.  I wrote him a number of times asking why the loan, and especially the interest, were not paid, and demanded an explanation.  I received no reply.  My client has been impatient for some time.  The papers have never been called for.  I have had them here all the time.  I still have them, including the interest coupon.  I have learned now that the American Mortgage & Investment Company, of St. Paul, have gone into the hands of a receiver.  How did Fitch ever come to pay his money without getting the papers?  He should have asked to have the papers sent to his bank so he could have had them upon payment.  My client wishes me to hand the papers to an attorney for collection or foreclosure.  I do not like to do this on account of the additional expense for Mr. Fitch.  I shall be glad to send the papers to your bank for payment, however, and thus save the expense of a foreclosure.  I do not know what would be the best way for Mr. F. to proceed against the St. Paul people. Kindly let me hear from you at once.  Kindly address me in this matter, and not the bank, nor me as cashier, and I will get your letters more promptly.

Yours truly,<br>
Gilbert Faber.

The deposition of Faber was taken.  He testifies:  That he had for some years sold or placed on commission to himself mortgages of said mortgage company, and had sold this one to defendant, and had taken care of the collections of interest when due, as a matter of accommodation to the defendant as a client of the bank.  He admits having written these letters, and that his interest in doing so was to collect the money for Engelhardt that he might use it in the purchase of another loan for him, out of which he, Faber, would presumably obtain a commission.  He admits that the mortgage in question was left by defendant with him to look after, and that he may have himself detached interest

coupons from it as it matured, and had them collected through the American Mortgage & Investment Company, which company "remitted and the money was handed to Engelhardt;" that some loans had been collected through the company the same way, witness testifying, "I do not recall now that the company collected more than two or three loans."

After his attention had been called to the fact that the mortgage note was payable at the office of the mortgage company, in St. Paul, he was asked:

Q. Did you expect Fitch to send you the amount of the loan here for Engelhardt?

A. No, I expected him to have me send the mortgage where he could pay the loan and have the papers.

Q. Didn't you state on direct examination that these loans were paid sometimes at the mortgage company's office?

A. I think I did.

Q. You have had it done that way, haven't you?

A. A few times.

Q. Under what circumstances was that done?

A. My recollection is that the company wrote me the mortgagor was ready to pay the loan and send them the papers for that purpose.

Q. Did they write you any such letter in connection with this Brust loan?

A. No.

Q. Did they ever have any correspondence after the loan became due?

A. I cannot recall.

Q. You wrote them, didn't you, after the loan was due?

A. I think I did.

Q. Did they reply to you?

A. I cannot testify now whether they did or not.

Q. Will you say that they didn't?

A. No, they may have.

Q. But you don't recall what was in those letters, do you?

A. I do not.

This testimony was given by deposition at Mendota on January 25, 1913, following these events the summer before.

34 N. D.—13.

The witness was also asked this question:

Q. Was at the maturity of this mortgage the note and mortgage sent anywhere by you for collection?

A. Not that I remember now.

And witness also testifies:

Q. You had written some letters a few months prior to the date the mortgage was due to the investment company, and also to Fitch, hadn't you?

A. I think I had. I am not positive as to Fitch as before maturity.

And the following:

Q. Now, Mr. Faber, when the interest notes become due, what was done with them?

A. They were usually sent on for collection.

Q. Where did Engelhardt leave these papers, including the mortgage and notes?

A. Most of the time they were in the bank in an envelop with his name on the outside.

Q. Who detached the coupon notes and collected the interest?

A. I don't remember who cut off the coupons. Often I do for our customers of the bank.

Q. Do you recall having detached any of the coupons to the mortgage in question?

A. I cannot remember any definite time, but I think I have cut off some of the coupons.

Q. Then these coupons were sent to the mortgage company for collection?

A. Some were. I am not certain as to whether all of them were.

Q. Please explain how the interest on the mortgage was collected and by whom?

A. They were *usually sent on to the company for collection,* and they remitted, and the money was handed to Engelhardt.

Respondent claims that the testimony of Engelhardt, that *all* of his business was left to Faber to transact, taken in connection with Faber's testimony as to his *usual* course of dealing in collection of interest coupons by transmitting them to the investment company for *collection,* thus constituting the company the mortgage holder's agent for col-

lection to that extent, together with his admission that the principal on at least two or three similar loans had been collected in the same way as these coupons, coupled with the fact that the physical possession of these notes and mortgage was with Faber and therefore at all times subject to his delivery, all of which is corroborative of the defendant that this business was left with Faber to transact; considered with the statements in his letters to Fitch that he had written the mortgage company "telling them it should be paid when due," and that he had written the president of the company "a number of times asking why the loan and *especially the interest* were not paid," and all taken together,—is sufficient to warrant the finding that the mortgage company had been authorized by Engelhardt, acting through Faber as his general agent in all matters concerning this mortgage, *to make this collection* of principal and interest. This is sufficient evidence to warrant this finding.

The case is different on facts from Trubel v. Sandberg, 29 N. D. 378, 150 N. W. 928; Martinson v. Kershner, 32 N. D. 46, 155 N. W. 37, and earlier similar cases, in many particulars involving proof of agency there lacking, and here present. The authority given by the holder of the mortgage to Faber to transact all business concerning it is greater than in either or any of those cases of the authority of the holder to the corresponding intervening party. It must be remembered that Engelhardt told him that "Faber transacted all his business" is not denied, and is strongly corroborated by the facts as recited by Faber, who admits having possession of the papers, the clipping of coupons and their collection, and does not hint that in so doing he was following directions given him by the holder of the mortgage, but on the contrary it appears he was looking after the matter with Engelhardt's tacit consent as though it was his own. And Faber's testimony also establishes a likelihood of the mortgage having been once transmitted for collection in the same course as the coupons had been collected. His memory on this was strangely faulty, though at the time of the giving of his deposition it was upon a matter comparatively recent. And his answer to the question as to whether this note and mortgage "was at the maturity of this loan sent anywhere by you for collection" is equally guarded by the answer, *"Not that I remember now."* Whether the witness feared being confronted by some letter to the mort-

gage company authorizing collection and transmitting the papers influenced this answer is problematical, but considering his admission that some loans similarly negotiated for this same company for which he was interested in selling loans had been collected through it, the mortgagee, renders it quite probable that the same course of dealing might have been attempted here. And this is strengthened by the apparently studied attempt in the letter of August 4, 1912, as a careful examination will show to impress upon Fitch that Faber has "had them here all the time," and his inquiry "how he ever came to pay his money without getting the papers," while at the same time a month after the maturity of the mortgage Faber was addressing Fitch at Tagus, North Dakota, when admittedly he knew and must have known at that time that he was a resident of Boone, Iowa. That this letter was written soon after the mortgage company went into the receiver's hands is significant. All taken together, these seem to be evidencing something out of the ordinary. Besides the testimony of the plaintiff must not be overlooked.

He gave this testimony:

Q. In that conversation did Faber state to you that, in substance, he had notified the *American Mortgage Company to collect the money on this note?*

A. *He said he had* but had not received anything.

This coupled with the statement of Engelhardt to the witness "that Faber transacted *all of his business,*" taken in connection with the fact that defendant is an old German gentleman who knew nothing about what Faber had done toward collecting the principal, and stated that Faber had said "the crops were poor and they could not get their interest now," considered with Faber's testimony of how he had transacted his business, is sufficient to warrant the finding that the mortgage company had been instructed and authorized by Faber, as plaintiff testifies Faber said they had, "to collect the money on this note," and in doing which they were the agents of Engelhardt under authorization given by Faber handling Engelhardt's business under authority of defendant.

The general rule is that a mortgagor should not part with his money until the mortgage is produced. Appellant lays great stress thereon. Yet that rule is not without its exception. And this case on facts is

within the exception. And that exception was declared by this court in the opinion on rehearing in Martinson v. Kershner, 32 N. D. 46, 155 N. W. at page 35, in the following language: "Plaintiff's counsel has cited numerous authorities to the effect that express authority to receive payment may be shown by *other proof than the possession of the securities. We have said nothing to the contrary.* We do not contend that want of possession is conclusive evidence of want of authority; but we do hold (and this rule is recognized by all the authorities cited by plaintiff's counsel) that as possession of evidences of indebtedness, in the absence of countervailing facts, clothes the agent with apparent authority to collect the indebtedness, so want of possession of such papers, *while not conclusive,* is evidence of great importance tending to show want of authority." But shall we conclude that, when the investment company made this collection, it did not have these mortgage papers ready for delivery had plaintiff in person appeared and demanded them? We have no right to indulge in any such conclusion when Faber does not remember whether he sent them or not, and has collected the interest coupons through the investment company, and admittedly collected other mortgages by sending them to the original mortgagee for collection. And another significant fact. This investment company held a second mortgage arising out of this same loan transaction. Faber was placing their loans on commission from them. Having many dealings with them, it was all the more probable, especially if known to him that they had an interest by way of second mortgage due at the same time in the collections to be made of the same mortgagor, that at the maturity of the loan, not the fifth-interest coupon alone, but the principal also, would be sent along with it to the mortgage company in whom he had faith evidenced by much dealing. An admitted course of dealing in accord with convenience, and many circumstances and testimony of admission as well, all taken together, are sufficient to sustain the finding that the mortgage company were authorized to collect both principal and interest, and that the mortgage indebtedness is paid. And under a record such as here, no presumptions of fact should be indulged to the disadvantage of the mortgagor. The judgment is affirmed, with costs.

BURKE, J. (dissenting). I desire most strenuously to dissent. This case is almost identical in facts with Trubel v. Sandberg, 29 N. D. 378,

150 N. W. 928, and Martinson v. Kershner, 32 N. D. 46, 155 N. W. 37.   In each of the three cases Faber had acted as the agent of the American Mortgage & Investment Company and sold mortgages to his neighbors in Illinois.   In each of the cases said clients desired their money from the mortgagors, but had retained possession of the notes and mortgages.   In each of the cases the mortgagor paid the money to the investment company, who embezzled the same.   In two of the cases this court held that there was an entire lack of evidence of actual agency upon the part of the investment company to receive the money, and yet in this case—identical in facts—the majority of this court desires to overrule the law to which they have subscribed within a year. In the majority opinion it is said, and correctly, that Mr. Fitch paid his money to the American Mortgage & Investment Company without receiving his notes, and that the burden of proving the authority of said investment company to receive the money was upon him.   The burden, indeed, is stronger than the majority opinion states it to be.   Ostensible agency cannot be claimed; it must be actual agency.   Upon what evidence does the majority find such agency?   Let us see.   Fitch never heard of Engelhardt, nor Engelhardt of Fitch, so far as this evidence shows; nor is there any evidence to show that Engelhardt ever heard of the investment company.   After the money had been paid and embezzled, Fitch hired an attorney and went to Illinois to see Engelhardt and Faber.   Absolutely the only testimony upon which they rely to show agency is Fitch's recollection of this conversation with those two parties.   Both of these conversations were after the payment.   Fitch says that he called upon Engelhardt and "asked him if he did his own business, and he said that Mr. Faber transacted all of his business. So, as I could not get much satisfaction out of him,—he did not know anything about the matter,—we went down to see Mr. Faber."   This is every iota of testimony upon which the majority finds that Faber was Engelhardt's agent.   Fitch then proceeded with his attorney to interview Faber, and he testifies:

Q. In that conversation did Mr. Faber state to you that in substance he had notified the American Mortgage & Investment Company to collect the money on this note?

A. He said he had, but did not receive anything.

This is every syllable of the testimony that is relied upon to show that Faber appointed the investment company agent for Engelhardt to collect the money. I insist that this is obviously inadequate evidence to show the positive agency of the investment company for Engelhardt. Plaintiff took Faber's deposition, and I set forth the substance of his testimony:

"It (the note) was delivered to me as such by the said American Mortgage & Investment Company *for whom I was selling these loans."*

At page 21 of the abstract he testifies:

Q. It was Mr. Engelhardt's money with which you bought this mortgage, wasn't it?

A. It was Mr. Engelhardt's money in payment *for the loan which I sold him.*

*     *     *     *     *     *     *     *     *     *

Q. You have been acting for him since this controversy has arisen, haven't you?

A. Only in a limited way.

*     *     *     *     *     *     *     *     *     *

Q. For whom were you acting when you wrote those letters to Mr. Fitch?

A. For myself. I had not been requested by anyone to do so.

*     *     *     *     *     *     *     *     *     *

Q. Did you receive any commission for negotiating this loan?

A. I did.

Q. From whom?

A. From the American Mortgage & Investment Company.

*     *     *     *     *     *     *     *     *     *

Q. Now you handled this money for Mr. Engelhardt, didn't you?

A. Not entirely.

Q. In what particulars did anyone else have anything to do with it?

A. *To the extent that I was selling those loans for the Mortgage & Investment Company.*

Nowhere from the beginning to the end of the abstract does Faber either say that he was agent for Engelhardt, or that he represented him in any manner. On the contrary he asserts over and over again that he was the agent of the American Mortgage & Investment Company

and received commission for making the sale of the loan in question to Engelhardt, who paid him nothing. True, he testifies that Engelhardt left the mortgage and notes in the *bank* of which Faber was cashier, in an envelop upon which his name was written. There is no evidence under what conditions they were left; whether in a safety deposit box, or as collateral or for convenience. I do not believe the incident furnishes any authority for the bank (and much less Faber) to act as his agent, and certainly gave the bank no authority to appoint still another agent to act for him.

I insist that there is not a shred of evidence showing that Englehardt gave the bank authority to act as agent for him, but, even assuming that he did, there still remains the open break in the evidence whereby the bank or Faber appointed the American Mortgage & Investment Company as Engelhardt's agent to make the collection. Upon one or two occasions coupons were sent to the mortgage company for collection. Was this sufficient to constitute the mortgage company Engelhardt's agent? The authorities say not. In Hollinshead v. John Stuart & Co. (Hollinshead v. Globe Invest. Co.) 8 N. D. 35, 42 L.R.A. 659, 77 N. W. 89, the authorities are reviewed, and it is clearly held that the collection of *interest* does not show authority to collect the *principal.* See also Mechem on Agency, §§ 934–945; Stolzman v. Wyman, 8 N. D. 108, 77 N. W. 285; Corey v. Hunter, 10 N. D. 5, 84 N. W. 570; and also the late case of Martinson v. Kershner.

Let us examine Faber's evidence further:

Q. When those other mortgages, you spoke·of in your direct examination for which you had made loans, became due, how were they collected?

A. Usually they were sent to a *local bank for collection.* . . . I do not recollect now that the company collected more than two or three of these loans.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

Q. Did you expect Mr. Fitch to send you the amount of the loan here for Mr. Engelhardt?

A. No, I expect him to have me send the papers where he could pay the loan and have the papers.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

A. I expected the mortgage company to instruct me where to send

the papers in this loan for collection, as they had done on several other loans which had matured and had been paid. . . . I did not expect them to enforce payment or make collection.

Q. If you didn't expect them to make collection, why did you send the interest note to them?

A. If I had expected the company to make collection of the loans, I should have sent the papers in the loan the same as I sent them the coupons for collection.

The law is correctly stated in Martinson v. Kirshner, 32 N. D. 46, 155 N. W. 37, as follows: "(1) Agency will not be presumed, and where its existence is denied the burden of proof is upon him who asserts its existence. (2) The mere fact that the assignee and owner of a negotiable note and mortgage, while retaining possession of such securities, permits the original mortgagee or the loan broker who negotiated the loan, to collect the interest instalments, does not confer upon such person, without possession of the securities, authority to collect the principal. (3) The extent of an agent's authority depends upon the will of the principal, and the latter will be bound by the acts of the former only to the extent of the authority, actual or apparent, which he has conferred upon the agent."

For the foregoing reasons, I respectfully dissent, and am authorized to state that Judge Christianson joins.