LIZZIE S. BERNARD, Respondent, v. LARS C. MADSEN, et al., Defendants.    F. W. SORENSON, et al., Appellants.

(204 N. W. 196.)

**Principal and agent — evidence held to show actual "authority" in agent to receive payment of principal of note secured by mortgage.**

1. By statutory definition in this state "actual authority is such as a principal intentionally confers upon the agent or intentionally or by want of ordinary care allows the agent to believe himself to possess." Comp. Laws, 1913, § 6337. For reasons stated, it is held that the evidence shows actual authority in the alleged agent to receive payment of the principal evidenced by the note secured by the mortgage sought to be foreclosed in this proceeding.

**Principal and agent — essential features of "ostensible agency" stated; evidence of holding out of agent as having authority to receive payment of note held to estop principal to deny authority.**

2. Under § 6324, Comp. Laws, 1913, an ostensible agency exists where the conduct of the supposed agent is consistent with the existence of an agency, and where, in the transaction in issue, the party with whom the supposed agent dealt was justified in assuming that the agency existed. The essential features of authority, within the purview of this section, are that the third party must have believed in the existence of the authority in the supposed agent, and such belief must rest upon some act or statement of the principal sought to be bound by the alleged authority. There must have been some conduct on the part of the principal reasonably resulting in the belief, in the mind of the third party, that an agency existed together with a reliance thereon. For reasons stated it is held that the evidence shows such a holding out to the defendant that the principal is estopped to deny the authority of the alleged agent to receive payment of the debt.

Opinion filed May 27, 1925.    Rehearing denied June 14, 1925.

Agency, 2 C. J. § 218 p. 576 n. 64; § 727 p. 956 n. 86.

Appeal from the District Court of McHenry County, *Burr,* J.

Action to foreclose a mortgage from a judgment in favor of the plaintiff, defendants appeal.

Reversed.

*Albert Weber,* for appellants.

Ratification of the acts of an agent need not in most cases be express but may be implied from the acts and conduct of the principal. 31 Cyc. 1263.

*Hyland & Foster,* for respondent.

Agency will never be presumed, but where its existence is denied the burden of proof is upon him who affirms its existence, and the proof of such agency must be clear and specific. 1 Am. & Eng. Enc. Law 2d ed. p. 968.

The agent's authority must be direct and specific, or the facts and circumstances must be of such a nature that the agent's right to act may be fairly implied. Trull v. Hammond, 73 N. W. 644.

It is, of course, a fundamental principle in the law of agency that every delegation of power carries with it, by implication, the authority to do all those things, which are reasonable, necessary, and proper to carry into effect the main power conferred and which are not forbidden. But the doctrine of implied authority goes no further than this. Burchard v. Hull, 74 N. W. 165.

When a negotiable promissory note is made payable at a particular office, such fact does not constitute the party in charge of the office of the agent of the holder of such note to receive the money thereon, unless such note is in the possession of such party. Corey v. Hunter, 10 N. D. 5, 84 N. W. 570; Hollinshead v. John Stuart & Co. 80 N. D. 35, 42 L.R.A. 659, 77 N. W. 89.

JOHNSON, J. This is an appeal from a judgment of foreclosure. The appellants demand a trial anew.

There is no substantial controversy as to the facts. In December, 1915 the defendant Madsen owned a quarter section of land in McHenry county. He borrowed $850.00 of L. A. Crowell of Ruso, payable December 23, 1920, at the First State Bank of Ruso, and secured the same by first mortgage on his land. The interest was payable annually and was evidenced by coupon notes. Crowell was the president

of the First State Bank of Ruso, hereinafter referred to as the Ruso bank. Madsen sold the land subject to the mortgage to the defendant Sorenson, and in January, 1922, Sorenson conveyed to the defendant Buseth. In July, 1920, through the death of her husband, the plaintiff became the owner of the note and mortgage. A. M. Burnap was an officer of the First National Bank of Chatfield, Minnesota. The Chatfield bank bought the note and mortgage from Crowell, and thereafter sold it to plaintiff's husband. Burnap was the plaintiff's agent and looked after the matters in connection with the note and mortgage for her, but remittances of interest continued to come to Stoudt, or the Chatfield bank. After the Bernards became owners of the note and mortgage either the Chatfield bank or Burnap had charge of the collection of the coupon notes. The coupons were sent to the Ruso bank for collection. Sorenson was not able to pay the principal when it became due; he made arrangements with the Ruso bank for an extension and paid the interest to that time. (December 1920.) The Ruso bank transmitted the interest to the president of the Chatfield bank, who delivered it to Burnap, but made no arrangements for a renewal. Some time prior to October, 1921, Sorenson, who was then in Montana, wrote to the husband of the plaintiff, not knowing that he had died. He obtained information that Bernard held the loan through the register of deeds. The letter is not in evidence. According to Burnap, Sorenson wrote that "he would like to make a new deal with him (Bernard) and that they could deal direct, and that he could pay 6 per cent interest direct and that if any question on the abstract came up if Mr. Bernard would send the abstract to him it would be posted up and he would look after it." Nothing was said in the letter, according to Burnap, regarding the payment of the loan. Sorenson thinks he wrote because he could not pay and wanted a renewal or an extension. In response to this letter Burnap wrote as follows: "Any matters that you have relative to your abstract and new loans, etc., kindly take up with your banker, as we do not deal direct with any of our loaning parties. We have no money for new loans in either Dakota or Montana." Sorenson says he believed, after receiving this letter, that he should deal only with the Ruso bank. In the meantime Sorenson sold the land to Buseth, and in January, 1922, the latter paid on account of the purchase price $2,200 to the Ruso bank. The bank

retained, at the direction of Sorenson, the principal due on the mortgage. Sorenson believed that thus the note was paid, although he did not receive it or a satisfaction of the mortgage. The bank, in fact, did not remit to Bernard, but retained the money in its possession. The interest payable in 1921 and again in December, 1922, was sent to the president of the Chatfield bank as if the principal were unpaid. In 1924 the Ruso bank became insolvent.

The agency of Burnap is conceded. Apparently Stoudt, or the Chatfield bank, conducted all negotiations with the Ruso bank pertaining to this loan. Burnap says that he was a "sort of a go-between." That the money to pay the mortgage note was left with the Ruso bank by Sorenson is likewise conceded. Authority in the Ruso bank to receive payment for the plaintiff is denied by the plaintiff, but asserted by the defendants. This is the sole question in the case. Burnap says the course of business when notified by the Ruso bank that the interest money was there was to send the coupons forward to it, and admits that a similar course would have been followed with reference to the principal note had notice been received that the money to pay it had been left with the bank. But the note and mortgage were not sent forward to the bank, and were never out of the possession of Bernard or Burnap until the foreclosure proceedings were begun. Sorenson never dealt with the plaintiff or Burnap, except as disclosed by the letter written to the plaintiff's husband and the answer received from Burnap.

The question in this case is purely one of agency. "An agency is either actual or ostensible." Comp. Laws 1913, § 6322. "An agency is actual when the agent is really employed by the principal." Section 6323, Comp. Laws 1913. "An agency is ostensible when the principal intentionally or by want of ordinary care causes a third person to believe another to be his agent, who is really not employed by him." Comp. Laws 1913, § 6324. "Actual authority is such as a principal intentionally confers upon the agent or intentionally or by want of ordinary care allows the agent to believe himself to possess." Comp. Laws 1913, § 6337.

The record contains undisputed evidence, introduced by the plaintiff herself, showing actual authority in the Ruso bank to receive payment of the principal as well as of the installments of interest from

the maker of the note and the mortgage securing the same; the testimony, further shows that the plaintiff is estopped from denying authority in the Ruso bank to receive payment. The second proposition, under the facts in this record, probably amounts to the same as saying that the Ruso bank had ostensible authority to receive payment. We shall quote at length {    .ortions of the record which support both of the foregoing propositions.

The authority of Burnap to represent the plaintiff in these transactions is not questioned. The fact that he dealt with the Ruso bank through Stoudt, the president of the Chatfield bank, is not material. Burnap, under examination by counsel for the plaintiff and as plaintiff's witness, testified as follows: "Q: Did you at any time in your individual capacity or as an officer of the bank authorize the First State Bank of Ruso or L. A. Crowell to make any collection of the principal of this loan? A: We never authorized them. *Whenever a loan was to be paid, they would write to send a satisfaction and they would see to the collection.* Q: When that was done, what did you do? A: We notified the party holding the loan and we would get the satisfaction from them and we would send the papers up. Q: In sending the coupons up, what was the custom? A: We would make a record of them and usually send them by registered mail for collection. Q: You sent the coupons? A: We sent the coupons." On cross-examination by counsel for the defendants this witness testified: "Q: You had a custom in handling such as the one involved in this action, did you say you had a custom? A: I said it was a usual custom that we would send these out on notification.' Q: Who would you get the notification from? A: Usually some banker. Q: You have handled other loans that you bought from Mr. Crowell and the First State Bank of Ruso, this was not the only loan you got from him. A: No, the First National Bank of Chatfield purchased several loans. Q: *In every case they would send the satisfaction to the Bank? A: Yes sir.* Not in every case, sometimes the parties would change around. Sometimes we sent them to Mr. Ross at Dogden. Q: Or some other banker? A: Yes. Q: And the notification you would get, would be from some banker through whom you or the bank had purchased the loan? A: Usually it would come from the banker, yes sir." After testifying further on cross-examination to the effect that he received

interest due on the loans through Crowell or the First State Bank of
Ruso, Burnap testified on re-direct-examination: "Q: In sending out
. . . When you received a notice from a bank that a party wished
to pay a loan, what did you do, did you say? A: We would get hold
of the party holding the loan or if we owned it ourselves, have the sat-
isfaction executed and get the abstract and all the papers and send
them by registered mail." The witness then testified that they never
sent out the note and satisfaction until they received notice, and that
they never received notice in the instant case that anybody desired to
pay the loan.

Assume, in the case at bar, that the Ruso bank had notified Burnap
or the Chatfield bank that Sorenson or the Madsens desire to pay
the note and that thereupon all the papers, including a satisfaction of
the mortgage, had been forwarded to the Ruso bank; that the money
was in fact paid to the Ruso bank, but that the satisfaction and the
papers were never delivered to the maker of the note, and the money
was never paid to the Chatfield bank. Upon the testimony of the wit-
ness Burnap, describing the course of dealing, it is self-evident that
the defendants would have had a perfectly good defense of payment in
an action to foreclose. Yet, wherein can it be said that the notifica-
tion by the Ruso bank and the transmission of the satisfaction by the
Chatfield bank would in any manner have amplified the authority of
the former in relation to the payment of this loan? The loss due to
the closing of the Ruso bank, or to its inability or neglect, for any rea-
son, to pay the money to the plaintiff, would have to be borne by the
plaintiff, the party, who put it into the power of that bank to commit
the wrong. The testimony clearly and indisputably shows that the
Ruso bank had actual authority from the Chatfield bank to receive
payment of notes or loans purchased by the latter, or by clients of the
latter, and that the Chatfield bank would simply execute or procure a
satisfaction and deliver the papers to the Ruso bank to be delivered by
it to the maker when he paid the loan. The purpose of the notification
of which the witness Burnap speaks was not to obtain specific authority
to receive payment of the loan in each individual case; it was only to
enable the Chatfield bank to procure or execute a satisfaction and for-
ward the loan papers to the Ruso bank to be, by it, delivered to the
borrower. The evidence expressly shows (See Ex. I infra) that the

notification might come to the Chatfield bank from the Ruso bank after, as well as before, the money had been paid by the borrower, and that in either case the conduct of the Chatfield bank in the premises would have been exactly the same. There is no escape from the conclusion that the Ruso bank had express authority from the Chatfield bank to receive payments of notes evidencing loans negotiated through it, including the note in suit, and that the only part the Chatfield bank took in the collection was in procuring or executing satisfactions and forwarding them with the loan papers to the Ruso bank for delivery to the borrowers. The only difference between the transaction here and the usual course of dealing between these banks, according to the testimony of Burnap, was that in the instant case, the Ruso bank failed to notify the Chatfield bank to forward the satisfaction and the loan papers. Due to financial embarrassment, or to other cause, the Ruso bank retained the principal and fraudulently continued to remit interest on the loan to the Chatfield bank as if the loan were still outstanding, notwithstanding it had been paid in full. In Sioux City Cattle Loan Co. v. Lovrien, 198 Iowa, 296, 197 N. W. 918, it is said:

"We do not overlook the fact that the officers of the two corporations deny that Degan had authority to receive payment on papers held by them, but. the long course of dealing with respect to this and similar paper, their knowledge that during that time he had been receiving payments before maturity on such paper, the fact that they objected to this only on occasions when he failed to turn over such collections promptly, are not consistent with the denial of his authority." The "course of dealing" warrants and requires the deduction that the Ruso bank had authority to receive payment.

This interpretation of the testimony of the witness Burnap, as to the authority of the Ruso bank to receive payment in the case at bar, is supported by exhibit I, a letter written on April 10, 1924, to defendant Sorenson. In this letter Burnap says in part: "We will let you fight it out with Crowell and Moe and let them dig up the money to you as they are the ones that played crooked and took your money without giving you *the satisfaction* for it.

"If they had of notified us that the money was there, *we·surely would have sent in the satisfaction,* and why did they pay interest to us after you had paid them. There is something damn crooked about

this deal that no one but Crowell or Moe can explain and they had better explain to you and I hope you land them both in the Pen.

"It is true that formerly I did write to you to deal with your home banker, that was when I did not want you to beat them out of their just commissions and you were lax in paying in your money before you had your papers in your fist." The witness distinctly recognizes the existence of the authority in the Ruso bank to receive the money and that, according to the course of dealing, the satisfaction would have been forthcoming together with all the papers, had the Ruso bank not been guilty of bad faith, in not giving notice of the payment of the principal by the defendants. It seems that the plaintiff is now attempting to visit upon the defendants the consequences of the dishonesty of her own agent.

Exhibit G, hereafter quoted more fully, is entirely consistent with the testimony of Burnap to the effect that the Chatfield bank did not deal with borrowers directly, but dealt only through the banks from or through which loans had been purchased. That letter is further proof of the fact, shown by undisputed evidence, that the Ruso bank had full authority to collect the interest and to receive payment of the principal; and that the only activity of the Chatfield bank in connection with the liquidation of loans was to mail the satisfaction and the loan papers upon advice that the borrower was ready to pay, or had paid, the loan.

We think that the conduct of the Chatfield bank shows clearly that it understood the relationship between itself and the Ruso bank to be that of principal and agent; that the latter bank had at least *some* authority to act for the former. This is not disputed. We think, further, that the conduct of the Chatfield bank shows how that authority was interpreted by it as to extent and scope. The Chatfield bank voluntarily acquiesced in the conduct of the Ruso bank with respect to the payment of loans; it permitted the latter to receive the money when the principal became due; this was the usual course. True, the Ruso bank did not have power of attorney to execute satisfactions, but this fact in no way limited its authority to receive payment. It might have had all the loan papers in its possession, yet not had authority to execute satisfactions of mortgages; there would have existed the same necessity for notification, either before or after the loan was paid, in

order to procure a sufficient release of the mortgage. The conclusion is irresistible that the acquiescence of the Chatfield bank in the practice of the Ruso bank to receive payment of the principal shows that the conduct of the latter was in fact authorized. The authority is not based on estoppel and it is, therefore, not necessary that the defendants knew the facts, tending to show actual authority, at the time payment was made. Murphy v. W. H. & F. W. Cane, 82 N. J. L. 557, 82 Atl. 854, Ann. Cas. 1913D, 643; Blake v. Domestic Mfg. Co. 64 N. J. Eq. 480, 38 Atl. 241. It is an inference of fact; the defendants are entitled to the benefit of that inference notwithstanding they were without knowledge of the custom, usage or conduct at the time the payment was made.

Sometime in the fall of 1921, Sorenson, who had purchased the land from the Madsens, wrote David T. Bernard, not knowing he had died. On October 6, 1921, the witness Burnap answered as follows: "Any matters that you have, relative to your abstract and new loans, etc., *kindly take up with your banker, as we do not deal direct with any of our loaning parties.* We have no money for new loans, in either North Dakota, or Montana." (Ex. G.) From the concluding sentence Sorenson might well have inferred that the creditor wanted the principal paid promptly; with the instruction to deal with "your banker" before him, it is wholly reasonable that the debtor believed the Ruso bank had authority to receive payment.

We are of the opinion that Sorenson, upon receipt of this letter, was entirely justified in dealing only with the Ruso bank and in making payment of both principal and interest to it. It must be remembered that when this letter was written, the loan was *overdue* and Sorenson wrote directly to the lender, for the purpose of obtaining a renewal or an extension of the loan. In a reply to the latter, he was advised that "We do not deal direct with any of our loaning parties," and instructed to take the matter up with his banker. It is undisputed that the bank to which reference is made in this letter was the Ruso bank. The testimony of Sorenson is to the effect that he supposed that thereafter he should deal only with the Ruso bank. He, accordingly, paid the principal to that bank. We think that the defendant Sorenson was led to believe by this letter that the Ruso bank had authority to receive payment of the principal; there had been no question about its author-

ity to receive payment of the interest installments, and there were no appearances inconsistent with the idea that defendant Sorenson might safely rely on the specific direction in the letter to deal with the Ruso bank, and pay the principal to it; nothing in the letter, or in the prior transactions between the parties, suggested any restrictions upon the authority of the Ruso bank, the existence of which was, in that letter, recognized by the Chatfield bank. There is. nothing to suggest that a reasonably prudent person, similarly situated and not learned in the law, would not have done precisely what the defendant did in this case. Interest payments had been sent for years without first seeing the coupon notes. Of this practice the plaintiff and her agent had actual knowledge; that the defendant would read this letter with the prior course of dealing in mind, plaintiff's agent, Burnap must of course have known. When, for the first time in more than six years, one of the defendants sought to deal directly with the holder of that note and mortgage he was confronted with an express refusal to deal directly with him, and was told to take it up with "your banker." The direction in the reply was consistent with all that had taken place before. From the standpoint of Sorenson, the inferences in favor of the existence of the authority are more reasonable than those against its existence; the former arise from prior transactions between the parties and from the words and conduct of the plaintiff, or her authorized agent, while the latter are largely deductions resulting from the application of technical and abstract legal rules.

Section 6324, Comp. Laws 1913 defining ostensible authority, is of course based on the maxim that when one of two innocent persons must suffer, it must be the one who misled the other to his prejudice. See § 7277, Comp. Laws 1913 and see Harrison v. Legore, 109 Iowa, 618, 80 N. W. 670.

Reference is made to certain prior decisions of this court, notably Corey v. Hunter, 10 N. D. 5, 84 N. W. 570; Martinson v. Kershner, 32 N. D. 46, 155 N. W. 37; Hollinshead v. John Stuart & Co. (Hollinshead v. Globe Invest. Co.) 8 N. D. 35, 42 L.R.A. 659, 77 N. W. 89. It is not deemed necessary to review them at length. They are all distinguishable from the case at bar. In none of them was there such evidence as Burnap's letter of October 6, 1921; nor did it appear in any of them that such actual authority existed as the record presents

in this case. It is undeniably the law that he who deals with an agent does so at his peril. When the authority of the agent is questioned the one who has dealt with him has the burden to establish it.

Authority to receive payment is not to be inferred from the mere employment as an agent; nor may it be inferred alone from the fact that an agent is authorized to collect installments of interest on a note as they become due; nor is the fact that a note is payable at a specific bank, without possession of the note or other evidence of indebtedness, alone sufficient to warrant the inference of authority in such bank to receive payment of the principal. It is, however, equally true that an agent may have authority to receive payment of the principal debt although he does not have possession of the note or other evidence of the indebtedness; such want of possession is merely a circumstance to be considered in determining the question, and the facts may be such that notwithstanding want of possession the agent has authority, express or implied, to receive payment of the principal obligation. Fitch v. Engelhardt, 34 N. D. 187, 157 N. W. 1038. "Thus where a person by his habits and course of dealing has held out an agent as having general authority to make loans for him, and to receive payments on the same, he may be bound by payments to the agent, although the securities are not in the possession of the latter." 2 C. J. 625. It seems in the instant case that the course of dealing conformed with the letter written by plaintiff's agent, and amounts to such a holding out to the defendants that the plaintiff is now estopped to assert the contrary.

Section 6324, Comp. Laws 1913, supra, is but a statement of a well established principle of the common law, which, it has been declared, lies at the foundation of the law of agency. Under this statute an ostensible agency exists where the conduct of the supposed agent is consistent with the existence of an agency, and where, in the transaction in issue, the party with whom the supposed agent dealt was justified in assuming that the agency existed. It would seem that the essential features of authority, within the purview of this section, are that the third party must have believed in the existence of the authority in the supposed agent, and such belief must rest upon some act or statement of the principal sought to be bound by the alleged authority. There must have been some conduct on the part of the principal rea-

sonably resulting in the belief, in the mind of the third party, that an agency existed together with a reliance thereon. We think that the evidence is all one way and indisputably shows that the conduct of the plaintiff and her agent was such as to lead the defendants reasonably to suppose that the Ruso bank had authority to receive payment of the principal. See Security State Bank v. Soule, 70 Mont. 300, 225 Pac. 127.

The judgment is reversed and the action dismissed.

BURKE and BIRDZELL, JJ., concur.

CHRISTIANSON, Ch. J. (concurring). I concur in that part of the opinion prepared by Mr. Justice Johnson covered by paragraph 2 of the syllabus. That is, I agree that, under the evidence in this case, there was such conduct on the part of the plaintiff as was likely to, and did, produce in the mind of the defendant Sorenson the belief that the First State Bank of Ruso was authorized to accept payment of the mortgage debt and that he acted in reliance upon this belief in making payment. I express no opinion as to whether the evidence establishes actual authority on the part of the Ruso Bank.

NUESSLE, J. (dissenting). But two questions are presented in this case: (1) Did the Ruso bank have actual authority to act as plaintiff's agent in collecting the principal obligation, and, (2) did the plaintiff so conduct herself as to reasonably warrant the defendant, Sorenson, in believing that the Ruso bank had such authority? That is, was there actual or ostensible agency in the bank? The defendant contends that there was. The plaintiff asserts the contrary. The burden is upon the defendant to establish his contention. When he dealt with an agent he did so at his peril. It is undisputed that the note and mortgage were at all times in plaintiff's possession or in the possession of her agent, Burnap. While this is not a controlling circumstance, yet it is a circumstance of great weight against authority in the bank to collect the debt.

The majority opinion impales the plaintiff on both horns. It holds that there was both actual and ostensible authority. This holding, that there was actual authority, is based largely upon the course of dealing

between the Chatfield bank and the Ruso bank. While Burnap was an officer of the Chatfield bank, yet a distinction must be drawn between his acts and the acts of the bank. He says, and his evidence is undisputed, that he looked after this matter for Mrs. Bernard individually and never turned it over to the bank for attention.

In the first place, I do not believe that the course of business as shown between the Chatfield bank and the Ruso bank justifies the majority holding that the latter was the agent of the former. The most that can be said is, that the Chatfield bank bought a number of real estate mortgages from the Ruso bank and other banks. Some of these mortgages were sold by the Chatfield bank to third persons, among whom was the plaintiff. When these mortgage loans fell due, or the interest was due, these banks, some times the ones from whom the mortgages were bought and some times others to whom the mortgagors went, notified the Chatfield bank that the money was ready and asked that the coupons or notes be sent forward to them. Then the Chatfield bank advised the holder of the mortgage of the fact, procured the coupon or the principal note, as the case might be, and sent it forward for collection by registered mail. Though this was the course of business, it does not establish authority on the part of the Ruso bank to collect notes that had not been sent forward to it and were not in its possession. If the holder of ten notes sends nine of them to a bank for collection, or sends nine of them to a bank upon notice that the latter has received the money for payment of the nine, surely it cannot be said that thereby such bank becomes the agent of the holder to collect the tenth note which it never had in its possession. If this be the rule, it is well that it be proclaimed to the commercial world, for surely the course of every day business will need to be and will be changed. Conceding however, that such is the rule, nevertheless, authority on the part of the Ruso bank is not thereby established as against the owners and holders of notes and mortgages who had in turn bought them from the Chatfield bank. In the instant case, no notice was received by the Chatfield bank that the money was collected or collectible, and the note and mortgage were not sent forward by the Chatfield bank to the Ruso bank. In fact, they never left the possession of the plaintiff. What difference can it make, that if such notice had been received by the Chatfield bank it would have obtained the note and mortgage from

Mrs. Bernard and sent them forward for collection? The fact remains that this was not done. The note was at all times in Mrs. Bernard's possession. The custom, whatever its effect might be as between the banks, could not under the circumstances bind her. Nor, can the fact that her agent, Burnap, was also an officer of the Chatfield bank make any difference so far as she was concerned.

Neither is there in the record any ground for the holding that ostensible agency is proven. Sorenson bought the land in February, 1919. He had not prior to that time dealt with the Ruso bank respecting the mortgage. Apparently he paid the interest in 1919 and made arrangements for an extension in 1920, and in 1921 wrote the letter, Exhibit G. Nothing that was done prior to the writing of the letter and nothing that he had learned prior to that time so far as the record shows, could have caused him to believe that the Ruso bank had any authority to collect the principal for the plaintiff, and in fact, there is no testimony on his part that it did. In 1921 Sorenson was in Montana; He wrote the plaintiff from Sydney. This letter is not in evidence and the testimony as to its contents is rather uncertain. Sorenson is unable to say much about it. His testimony is open to the inference that at least one of the reasons why he wrote, was, that he was selling the land and wanted the abstract. In any event, Burnap, answering for the plaintiff wrote, (Exhibit G) "any matters that you have relative to your abstract and new loans, etc., kindly take up with *your banker* as we do not deal direct with any of our loaning parties. We have no money for new loans." Great stress is laid upon this letter in the majority opinion. Conceding that the reference to "your banker" was to the banker at Ruso, nevertheless, I cannot see how this letter could have reasonably induced Sorenson to believe that the Ruso bank had authority to act for the plaintiff. Nothing was said in Sorenson's letter about payment of the old loan. Though the letter was lost, Sorenson could not be led to say that there was. He wanted an extension or a new loan. The reference in Exhibit G was to "your banker." Whose banker? Surely Sorenson's banker and not the plaintiff's banker. Had Burnap said, "take this matter up with your lawyer," could it reasonably be argued that Sorenson's lawyer thereby became the plaintiff's agent? It seems plain that the most unfavorable (to the plaintiff) inference that can be drawn from the letter in question was,

that she did not want to deal with any unknown and irresponsible parties. She required them to deal through "their bankers." Can it, for instance, be argued that if Sorenson had taken the matter up with a Sydney banker or with any other, that the plaintiff would have objected? I think not. Sorenson was acquainted with and dealt with the Ruso bank. That bank looked after his business and drew his papers. He was not induced to do business with or to trust the Ruso bank or banker because of the reference in Burnap's letter. His contention in that regard is an after-thought. He had already entered into a contract to sell his land, and the Ruso banker wrote the contract for him. The Ruso bank was Sorenson's bank. The Ruso banker, "his banker." When he sold his land, that banker wrote the contract for him and the purchaser paid the purchase price to that bank for Sorenson. The payment to the bank was payment to Sorenson and the banker retained out of that payment the monies for the discharge of the plaintiff's mortgage. Beyond question, all that was done in that behalf, was done at Sorenson's direction, with the bank acting as Sorenson's agent. Sorenson had the means of protecting himself. He could have insisted that the money be not turned over until the note, with a satisfaction of the mortgage was delivered. He did not do that. He was satisfied to entrust this matter to his banker. That banker proved dishonest. The loss should be Sorenson's and not Mrs. Bernard's.

As was well said by Chief Justice Bartholomew in Hollinshead v. John Stuart & Co. (Hollinshead v. Globe Invest. Co.) 8 N. D. 35, 42 L.R.A. 659, 77 N. W. 89, concerning a mortgagor who gave his money to one without authority from the holder of the mortgage debt to collect it:

"He had in his own hands the means of absolute protection. He had only to see to it that he received his note when he paid his money. If he neglected this simple requirement, demanded not more by the law than by common prudence, he paid at his peril; and if loss occurs he must bear it. One party or the other must suffer and he being the party in fault must bear the burden."

The majority opinion quotes Burnap's letter, Exhibit I, as recognizing and confirming the agency of the Ruso bank to act for the plaintiff. I can not read it so. It was written after the fact. Rather it is a more inelegant, if not a more vigorous statement of the sound com-

mon sense doctrine enunciated in the Hollinshead Case and quoted above. It is said in the majority opinion that the evidence in this case "is all one way." I think this is true, but that way leads from, rather than towards, the conclusion there reached. I view the matter as the trial court who saw and heard the witnesses viewed it. The case turns wholly upon the testimony of Burnap and Sorenson. They both testified in person before the trial court. Burnap's testimony was clear and direct. Sorenson's vague and uncertain. The holding of the trial court is in accord with the decisions heretofore rendered by this court, (see Fitch v. Engelhardt, 34 N. D. 187, 157 N. W. 1038; Martinson v. Kershner, 32 N. D. 46, 155 N. W. 37; Trubel v. Sandberg, 29 N. D. 378, 150 N. W. 928; Corey v. Hunter, 10 N. D. 5, 84 N. W. 570; Hollinshead v. John Stuart & Co. supra; Stolzman v. Wyman, 8 N. D. 108, 77 N. W. 285. See also notes in 23 L.R.A.(N.S.) 414 and L.R.A.1916B, 860) and should be affirmed.