[No. 1835.]

JOHN STUART & COMPANY, LIMITED, ET AL. v. ASHER ET AL.

1. APPELLATE PRACTICE—FINDINGS OF TRIAL COURT—EVIDENCE—DEPOSITIONS.

The rule that the appellate court is concluded by the finding of the trial court or verdict of jury upon conflicting evidence does not apply where the finding or verdict is upon depositions or other written evidence. In such case the appellate court will decide for itself upon which side the preponderance is.

2. EVIDENCE—AGENCY—OPINION OF WITNESS—LEGAL CONCLUSION.

Whether or not, an agency exists, or one has power to act for another, is a question of law to be determined from the facts; and the mere opinion or statement of a witness that one is an agent or representative of another is a legal conclusion and of no value as evidence of agency.

3. BILLS AND NOTES—PAYMENT—AGENCY.

A loan company dealing in mortgage securities took in its own name a negotiable note with interest coupons secured by a trust deed upon real estate, and immediately indorsed and transferred the note and coupons guaranteeing the payment of the coupons at maturity and the principal note within two years after maturity. The purchaser returned some of the coupons to the loan company in settlement of a debt, others were sold in the market and the remainder were sent by the purchaser to its bankers for collection as they fell due and were presented to and paid by the loan company on the days they fell due, all of such coupons being paid by the loan company before being collected from the borrower. The borrower had no notice of the transfer of the note, and at maturity paid the principal of the note to the loan company, who shortly thereafter failed without having paid off the note. The loan company was never in possession of the note after its transfer. *Held* that the loan company was not the agent of the holder of the note for its collection, and the payment made to the loan company was not a payment of the note.

4. SAME.

In order that a payment by a borrower to a loan company of a note that has been transferred by the company before maturity shall be adjudged a payment of the note where the loan company fails to pay the money to the holder, it devolves on the borrower to prove either an actual agency on the part of the loan company to collect the note or facts which would estop the holder of the note from denying such agency.

*Appeal from the District Court of Saguache County.*

Mr. CHAS. E. GAST and Mr. HENRY A. DUBBS, for appellant.

Mr. IRA J. BLOOMFIELD, for appellees.

THOMSON, J.

On the 31st day of December, 1898, William M. Asher and Joann Asher, his wife, made their note to the Globe Investment Company for $800, to secure the payment of which they joined in a conveyance of certain real estate, the property of Joann Asher, to Walter C. Frost, as trustee, and empowered him, in case of default by the makers, to sell the land and apply the proceeds in payment of the note. The note, by its terms, was payable on the 1st day of January, 1895 ; and attached to it were ten coupon interest notes for $24.00 each, the first payable six months from its date, and one every six months thereafter, until the maturity of the note. On the 28th day of February, 1892, Joann Asher died, and such proceedings were subsequently had that the title to the property, subject to the trust deed, became vested in William M. Asher. On the 27th day of February, 1898, Asher sold and conveyed the property to Frank L. Bishop, but was not to receive the purchase money until he should cause the trust deed to be satisfied and canceled upon the record. A short time after its execution, the note, with the attached coupons, was sold and indorsed by the Globe Investment Company to John Stuart & Company, Limited, a

corporation having its domicile in England.    The Globe company also guaranteed, in writing on the back of the note, its payment within two years after its maturity, and the payment of the coupons at their maturity.    On the 1st day of December, 1894, Asher applied to the Globe company for a renewal of the loan, and was informed by it that it would endeavor to effect the renewal in a short time; but afterwards, on the 1st day of February, 1895, it notified him that the renewal could not be made; and, on the 6th day of March, 1895, he paid the amount due, to the Globe company, which shortly after the payment, became insolvent.    On the 17th day of September, 1896, Walter C. Frost having refused to act as trustee, W. A. McEntyre, who was, in pursuance of the terms of the trust deed, appointed his successor by John Stuart & Company, Limited, the legal holder of the note, commenced proceedings for a foreclosure of the trust deed by advertisement of the land for sale as provided in the deed.    Until after payment of the note had been made to the Globe company, Asher had no knowledge that John Stuart & Company had possession of the paper, or claimed any interest in it.    Upon the foregoing facts, alleging also that in receiving from Asher the money due upon the note, the Globe company acted as the agent of John Stuart & Company, Asher and Bishop brought this suit against John Stuart & Company and W. A. McEntyre, to obtain a decree canceling the trust deed.    A temporary injunction restraining the sale was allowed; and upon the final hearing, the injunction was made perpetual, and the trust deed adjudged satisfied, and ordered to be canceled.    John Stuart & Company appealed.

This record presents but one question, and that is whether in receiving the money from Asher, the Globe Investment Company was the agent of John Stuart & Company.    The plaintiffs' counsel, upon the hypothesis that there was a conflict in the evidence, assumes that we are bound by the findings of fact of the trial court.    It is true that where the witnesses testify in open court, and their statements are contradictory, the conclusions upon the facts reached by the

jury, if there was one, or by the court, if there was not, are generally accepted as final. The reason of the rule is that the jury or the judge has an opportunity which the appellate court has not, of seeing and hearing the witnesses, and observing their appearance and manner. There are many things affecting the credibility of a witness which cannot be shown on paper, but with which the tribunal, in whose presence he testifies, is in direct contact, and from which a reasonably correct opinion may be formed as to the accuracy or truthfulness of his statements; and if the judgment of the tribunal which did see the witness, as to the value of his testimony, might be overridden by that of a tribunal which did not, there would be little safety in litigation. But where the testimony is in writing, and is read to the court, there is no such rule, and there is no reason for such rule. The opinion of one tribunal upon the paper, is as good as that of another. In this case, the evidence upon the question of agency was all in the form of deposition. Upon that question, no witness testified in the presence of the court. Therefore, in the matter of determining from the evidence what the facts were, the trial court had no advantage that we do not have; and it is entirely competent to us to decide for ourselves upon which side the preponderance was.

Several questions are raised affecting interrogatories propounded to witnesses by the plaintiffs, and answers made by witnesses to other interrogatories, which we do not find it necessary to decide. Giving the plaintiff the full benefit of the depositions as they were written, we think he fails to show himself entitled to relief. The witnesses were Allison G. Mason, president, Lowell Moore, treasurer, and Walter H. Nash, corresponding clerk, of the Globe Investment Company. Mason and Moore testified that the Globe company acted as the agent of the parties to whom it sold loans, in caring for the security and making collections of interest and principal; and, in particular, that it was such agent of John Stuart & Company, Limited, in the matter of all loans sold to that company, without exception. To say that one is the

agent of another is to state a legal conclusion. . Whether an agency exists, or whether one has authority to act for another, is a question of law to be determined from the facts; and the mere opinion of a witness that one is an agent or representative of another, is of no value. Courts will not accept a witness's construction of the language or the acts by which he supposes the authority to be conferred. The evidence, however, does not all consist of legal conclusions, and we are able to find in the testimony sufficient matters of fact to enable us to dispose of this appeal.

The deposition of Richard Heaton Smith, a managing director of the defendant, was read in evidence in its behalf; and while portions of his testimony may be criticised as consisting of conclusions, in the main, it is otherwise; and his statements are supported by the evidence for the plaintiff, in so far as that evidence purports to show facts. Mr. Smith said that the note and trust deed never were in the possession of the Globe Investment Company after John Stuart & Company received them; that in 1890, the latter corporation sent coupons belonging to this loan and some others, to the Globe company in payment of an indebtedness owing by it to that company; that it sold the coupons due in January and July, 1891, and January, 1892, to London bankers; that it consigned all the other coupons to Kidder, Peabody & Company, its bankers in Boston, for collection and remittance; that these bankers presented the coupons at the office of the Globe company, where they were paid; that none of the coupons were ever delivered to the Globe company for collection, or surrendered to that company before payment, except those sent to it in 1890, in discharge of a debt; that there never was any arrangement whatever between John Stuart & Company, and the Globe Investment Company for the collection of either interest or principal of this loan; and that no part of the principal of this loan was ever received by John Stuart & Company. Walter H. Nash, the Globe company's corresponding clerk, testified as follows: It is a fact that in order to protect itself on its guaranteed loans, the Globe company

voluntarily attended to collections. John Stuart & Company had Boston bankers to look after collections from the Globe company, of investments bought from that company. It was the custom of Stuart & Company to send the notes through their Boston bankers, to be surrendered to the Globe Investment Company on payment." The following is from the testimony of Mr. Moore, the Globe company's treasurer: " The coupons in this loan, and all others sold to Messrs. John Stuart & Company, Limited, were presented to the Globe Investment Company, on their due day, and were paid by the Globe Investment Company regardless of whether or not they had been previously collected from the borrower. The Globe Investment Company then sent said coupons west for collection, or, if they had been collected, the coupons were sent west to be delivered to the borrower. * * * Said payment by the company to Messrs. John Stuart & Company, Limited, preceded their collection from the borrower in every case but one, and in that one case the borrower paid the interest to the company before it paid it to John Stuart & Company." Mr. Mason, president of the Globe company, made the following statement: " Messrs. John Stuart & Company had bankers in Boston who looked after the collection of loans bought from the Globe company. It was the custom of John Stuart & Company to send the notes through their Boston bankers to be surrendered to the Globe company on payment."

We are enabled from the foregoing testimony to form a reasonably clear idea of the situation. The Globe Investment Company, by its guaranty, had made itself responsible to the holder for the payment of the coupons at their maturity, and John Stewart & Company looked to it for such payment. The latter sent the former some coupons in discharge of a debt, and sold some to outside parties ; but it caused all the others to be presented to the Globe company for payment. That company paid them, and then proceeded to collect them. There was one instance, and only one, in which a borrower made a payment to it before it had paid the holder; but that

transaction does not appear to have had any connection with this particular loan, neither is any explanation of how it happened, given. It was evidently an exception to the general method, and, apparently, accidental. But it is clear enough that the payments by the Globe company were made in redemption of its guaranty, so that each coupon which it paid, became its own property; and when it collected the money due upon the coupons, it was acting for itself. The coupons which were remitted to the Globe company, in satisfaction of a debt owing to it, belonged to it. What became of those which were sold to London bankers, does not appear; but they could not have been collected by the company as agent of John Stuart & Company, because the latter did not own them. So far as this record discloses, the Globe company, in collecting the coupons, did not act as agent at all. It was its own coupons which it collected, and in making the collections, it acted solely in its own behalf. And we cannot find in the evidence that it had any greater authority in connection with the principal note. After the transfer to John Stuart & Company, that note never was in its possession; and according to Mr. Nash and Mr. Mason, all notes sold to John Stuart & Company by the investment company, were collected *from* the latter company, and not *through* it. Witnesses undertook to say that the Globe company was the agent for the collection of this note, but in their statements they embraced the interest also. Giving to these statements the force of statements of fact, the authority which the witnesses asserted the Globe company possessed, applied alike to interest and principal. Whatever the facts may have been from which the witnesses drew their conclusions, we have seen that in respect to the interest, their opinions were wrong; and as the supposition of an authority to collect the principal rested upon the same facts, it must likewise have been without foundation.

John Stuart & Company were the purchasers of a negotiable promissory note for value before its maturity; and it devolved upon Asher, in order that his transmission of the

money to the Globe company might be adjudged a payment of the note, to prove either an actual agency, or facts which would, as against him, estop John Stuart & Company to deny an agency. ' Not only was there no such proof, but the evidence which was submitted, bore strongly, if not conclusively, in the opposite direction.

The judgment must be reversed.

*Reversed.*