## DIETZEL v. MARTIN.
### No. 2358.

Court of Civil Appeals of Texas. Beaumont. May 3, 1933.

Rehearing Denied May 10, 1933.

J. B. Lewright and Guy A. McFarland, both of San Antonio, for appellant.

S. S. Searcy, of San Antonio, for appellee.

O'QUINN, Justice.

On December 6, 1926, appellant executed and delivered to Wimer-Richardson & Co., an investment corporation, four notes for a total of $10,000, payable to bearer or order, bearing 7 per cent. interest and providing for attorney's fees. They were numbered 1 to 4, and payable at the office of Wimer-Richardson & Co. in San Antonio, Tex., "on or before" one, two, three, and four years from date, respectively. Appellant also executed and delivered to Wimer-Richardson & Co. certain interest coupon notes, payable to bearer or order, at the office of Wimer-Richardson & Co., and to secure the payment of all of said notes he executed and delivered to Wimer-Richardson & Co. a deed of trust covering certain real estate in San Antonio. This deed of trust was duly recorded.

About a month after the execution of the notes, on January 4, 1927, appellee, Virginia Martin, acting through her agent and attorney, C. C. Clamp, purchased from Wimer-Richardson & Co. notes Nos. 2, 3, and 4 of said series of notes, and paid for same the sum of $8,045.11, being $8,000 principal and $45.11 interest which had accrued to that date, and said notes Nos. 2, 3, and 4 were then delivered by said Wimer-Richardson & Co. to said C. C. Clamp for said Virginia Martin, and by said Clamp delivered to her. There was no written transfer of said notes. If notes sold by said company were payable to bearer or order, as here, the company did not usually give a transfer, unless specially requested.

On December 1, 1927, appellant sold the real estate mortgaged to secure the payment of said four notes, and on said date paid to Wimer-Richardson & Co. the sum of $8,280 as full payment of said notes Nos. 2, 3, and 4, which said Wimer-Richardson & Co. had, on January 4, 1927, sold to appellee, and received

from said company a receipt for said sum and a release of the deed of trust lien on the real estate securing the payment of said notes, which recites that Wimer-Richardson & Co. was the legal owner and holder of the notes in question; that it had received payment in full of same, and had canceled and annulled said notes and the deed of trust lien given to secure their payment, and fully released said real estate "forever free, clear and acquitted of the above described deed of trust lien and vendor's lien that were made and created, as above recited, to secure the payment of the four notes above described."

Coincident with the sale and delivery of said notes Nos. 2, 3, and 4 to Virginia Martin, Wimer-Richardson & Co. executed a written guaranty in which it obligated itself to "protect said guarantee against any loss of any of the principal of said notes  *  *  *  and any interest thereon," and further that "guarantor will collect the principal and interest of said notes for the guarantee without charge," and would insure the property involved against certain described losses. The issuance of this guaranty was a matter of record in the office of said Wimer-Richardson & Co., and appeared among the files of "Loan No. 2423," which showed the transaction with Virginia Martin through her attorney, C. C. Clamp.

The interest coupon notes were paid as they matured to the date of the bankruptcy of said company.

On December 4, 1927, when Dietzel paid to Wimer-Richardson & Co. the sum of $8,280, to be applied in full payment of the notes 2, 3, and 4, Wimer-Richardson & Co. accepted the payment for that purpose, and, as before stated, gave Dietzel its receipt therefor and a release of the deed of trust lien securing the payment of said notes, and credited the $8,280 upon its account with Virginia Martin, but concealed from Virginia Martin and her agent and attorney, Clamp, the fact that it had collected the money and appropriated said money to its own use and benefit. It is conceded that neither Clamp nor Miss Martin had any knowledge of the payment of the money.

On October 22, 1929, Wimer-Richardson & Co. was placed in receivership, and on March 12, 1930, was adjudged a bankrupt. On January 23, 1930, appellant, alleging that he had "only recently been informed" that appellee claimed that she was, and for "several years" had been, the legal owner and holder of the notes 2, 3, and 4 in question, filed this suit with full allegations of the facts relative to the execution and delivery of the notes and deed of trust to Wimer-Richardson & Co. and the payment of same to said company, and its receipt for the money and release of the deed of trust lien. He prayed for judgment canceling the notes and that appellee be required to surrender and deliver said notes to

him. Appellee answered, and in a cross-action prayed for judgment against appellant for the full amount of the notes, interest, and attorney's fees. The case was tried to the court without a jury, and judgment rendered that appellant take nothing by his suit, and that appellee have judgment against appellant as prayed for. The case is before us on appeal.

Appellant presents numerous assignments of error; but as we view the record, the questions are few, and we shall discuss them instead of considering the assignments in the order presented.

■ Appellant's allegation in his petition and his insistence that the notes in question were nonnegotiable is without force. The fact that they were payable to bearer does not make them nonnegotiable. Subdivision 4 of section 1 of article 5932, R. S., expressly provides that for an instrument to be negotiable it must be payable to order or to bearer. And article 5934, § 30, provides that if an instrument is payable to bearer it is negotiated by delivery. In the instant case the notes were payable to bearer and were negotiated by Wimer-Richardson & Co., the owner and holder, selling and delivering them to appellee by delivering them to her agent and attorney, C. C. Clamp.

■ The contention of appellant that Wimer-Richardson & Co. had express authority, and if not express then implied or ostensible authority, from appellee to accept and receive the money paid to it by appellant in full satisfaction of the three notes, is overruled. The question is one of fact, and we do not believe that there is any evidence in the record to show that Miss Martin had in any manner expressly authorized Wimer-Richardson & Co. to act as her agent in receiving money in payment of the notes. To the contrary, Miss Martin testified that Wimer-Richardson & Co. was never at any time her agent for any purpose. It is without dispute that Wimer-Richardson & Co. did not have in their possession the notes in question, but that Miss Martin had possession of them at all times from the date of their purchase by her, as the owner and holder of same.

■ It is true that Wimer-Richardson & Co. collected the interest coupon notes from appellant, credited appellee's account therewith, as they were presented by appellee, but this did not make Wimer-Richardson & Co. the agent of appellee for the collection of the principal notes. Cunningham v. McDonald, 98 Tex. 316, 83 S. W. 372, 373; Higley v. Dennis, 40 Tex. Civ. App. 133, 88 S. W. 400; Case Note, 23 L. R. A. (N. S.) 418. In this last citation, the applicable rule is thus stated: "That one other than the holder of securities collected the interest thereon, without the possession thereof, for the holder, without protest on his part, is not sufficient to raise

a presumption or implication of authority to collect the principal without the possession of such securities." (Citing numerous authorities, including the Texas cases above cited.) See 8 C. J., Bills and Notes, §§ 812, 813, 830, 835, and 837; 3 R. C. L., Bills and Notes, §§ 521, 522.

The case of Cunningham v. McDonald, supra, involved very similar facts and the same question of agency, as in the instant case. There, Judge Brown, speaking for the Supreme Court, said that, if it be "admitted that the corporation, acting as the agent·of Cunningham [the owner and holder of the note], collected the interest from McDonald [the maker of the note], that fact would not tend to prove that it had the authority to collect the principal of the note. How can it be inferred from the agency to collect the interest that the agency to collect the note existed? The one fact does not form a basis for the presumption of the other fact." Moreover, it appears that Miss Martin did not place the interest coupon notes with Wimer-Richardson & Co. for collection, but acting through her agent and attorney, Clamp, placed said interest coupon notes with the Frost National Bank of San Antonio for collection and it presented same to and collected from Wimer-Richardson & Co. Wimer-Richardson & Co. at no time after it sold the notes to Miss Martin ever had the notes or the interest coupon notes in its possession for any purpose.

It is insisted by appellant that Wimer-Richardson & Co.'s agency to collect the principal notes is necessarily inferred from its guaranty of the collection and payment of the whole obligation, both principal and interest. But the contrary is stated to be the law in Cunningham v. McDonald, supra. In that case the Bunnell & Eno Investment Company sold and delivered to Cunningham a note payable to it at its office and executed and delivered to Cunningham its guaranty of the payment of the note and interest, as did Wimer-Richardson & Co. to Miss Martin in the instant case. Judge Brown, in disposing of this contention, said: "The terms of the guaranty relied upon as evidence of authority to collect the principal do not reserve to the Bunnell & Eno Investment Company any control over the note. It provides that after the lapse of a certain time the guarantor shall have the right to take up the note by paying the principal thereof, or, in case the holder of the note should refuse, then the guarantor should be relieved from the guaranty; but this does not in any way tend to prove that the Bunnell & Eno Investment Company retained any interest in or control over the note itself." It was insisted in the Cunningham-McDonald Case (in the brief of appellee, 98 Tex. 317, 83 S. W. 372) that "the terms of the guarantee given by the investment company to Cunningham having author-ized the company to collect the coupons and note and account to him for the same, the company became his agent, and the court was authorized to submit the issue of agency to the jury, and the jury was justified in finding for appellee on that issue." The Supreme Court, speaking through Judge Brown, held against this contention, as stated above. This holding controls. the issue of agency contended for herein by appellant, both as to express and ostensible agency.

In the case of John Stuart & Co. v. Asher, 15 Colo. App. 403, 62 P. 1051, the Court of Appeals of Colorado held that where a loan company guaranteed loans made by it, and it was customary for people making loans through it to present interest coupons for payment, which, to protect its guaranty, the loan company paid and thereafter collected from the debtor, such mode of doing business is not sufficient to justify the debtor in paying the principal to the loan company without the possession of the security. ·

The contention that the clause in the deed of trust (which was of record) securing the payment of the notes and which authorized the trustee, or Wimer-Richardson & Co., to execute a release of the deed of trust, considered in connection with the other papers in said transaction executed and delivered the same date, "in and of itself constituted Wimer-Richardson & Co. the expressly authorized agent of appellee, as the 'bearer' of these notes, to accept payment of the notes and to release the deed of trust lien," is not sound. Aside from the fact that we do not believe that the mere fact that the deed of trust provided that the trustee, or Wimer-Richardson & Co., were authorized by said instrument to execute a release of the deed of trust lien, when the notes were paid, conferred any authority, ostensible or otherwise, upon Wimer-Richardson & Co. to collect the principal notes after said notes had been sold and delivered to appellee, and were no longer the property of nor in the possession of said company, it is not shown that appellee had actual notice of the terms of the deed of trust. The registration of the deed of trust did not give appellee constructive notice of its terms because the constructive notice rule does not apply to the holder of negotiable instruments. Therefore, appellee, who purchased the notes before maturity and for a valuable consideration, could not be bound by any of the provisions of the deed of trust, of which she had no knowledge, either expressly or impliedly, authorizing Wimer-Richardson & Co. to accept from appellant money in payment of the notes held by her. Hassard v. May (Tex. Civ. App.) 152 S. W. 665, 671; First Nat. Bank v. Chapman (Tex. Civ. App.) 164 S. W. 900.

It is contended that appellant acted in good faith. That the notes being executed and delivered to Wimer-Richardson & Co. for a loan to secure which he executed a deed of

866

trust on certain real estate in San Antonio, and the principal notes and the interest coupon notes being payable at the office of Wimer-Richardson & Co., and the interest coupon notes having been paid at said office as they fell due, he was justified in acting on the theory that said Wimer-Richardson & Co. was still the owner and holder of said notes, and authorized to receive payment thereof. The fact that appellant had no actual notice of the sale and delivery of the notes to Miss Martin did not relieve him of the duty to ascertain the true owner and holder of the notes before making payment of same. 3 R. C. L., Bills & Notes, §§ 521, 522. The record does not support his contention of good faith. According to appellant's own testimony he made numerous and large loans through Wimer-Richardson & Co., amounting to two or three hundred thousand dollars; he did most of his banking business with them; he knew when he executed the notes and deed of trust to Wimer-Richardson & Co. that the notes were payable to bearer, and that said company got them for the purpose of negotiating them; he had access to the books of the company, which reflected the ownership of the notes, but did not look at them to ascertain whether the notes had been sold or not. Moreover, appellant was a stockholder and director of Wimer-Richardson & Co., and was perfectly familiar with the nature and manner of its transactions. He knew when he gave the notes to the company it intended to sell same, and still he admits that he made no examination of its books, or any other investigation to ascertain whether the notes had in fact been sold, but blindly, trusting the company, paid the notes when they had not been owned or possessed by the company since about a month after their execution. The records of Wimer-Richardson & Co. contained full notice of the situation, ownership, and possession of the notes, and, if but scanned by appellant, would have informed him of all the facts. He had access to all of this information, but neglected to exercise any care, while appellee had no such access, but only knew that she owned and held the notes, and was not in any way acting through or relying upon Wimer-Richardson & Co. to represent her. Appellant says he had full and complete faith and confidence in Wimer-Richardson & Co. and its management, and made no inquiry, not even when the notes were not delivered to him when he paid the money, relying upon Kenneth Wimer, actively in charge of the company's business, to deliver the notes in a few days. Appellee had no such relations with the company and looked to it for only one thing—to pay according to its guaranty the notes and interest if appellant failed to do so, to pay its own obligations, not to act for her without her knowledge or consent. Appellant, having trusted

most, should suffer most—the judgment against him was proper.

The cases of Boltz v. Graff (Tex. Civ. App.) 43 S.W.(2d) 469, and Hicks v. Hugo (Tex. Civ. App.) 43 S.W.(2d) 471, grew out of similar transactions with Wimer-Richardson & Co. These cases were tried in district court of Bexar county, Tex., resulting in judgment against the defendants; they making, in effect, the same contentions as here. These cases were appealed to the Court of Civil Appeals at San Antonio, and each was affirmed. We think these decisions control the instant case. It is true that a writ of error was granted in each case, the notation made by the Supreme Court being that the writs were granted on the assignment that Wimer-Richardson & Co. was the "ostensible" agent of the claimants to collect the debts. We have given careful consideration to this question, and believe that the San Antonio Court of Civil Appeals correctly determined the question. We think that under the facts and circumstances appearing without dispute, and by the great weight of authority, no such authority or agency is shown.

The judgment should be affirmed, and it is so ordered.

Affirmed.